[No. 38369.   Department One.   January 26, 1967.]

THE STATE OF WASHINGTON, *Respondent*, v. JOEL LUNG, *Appellant.**

*Reported in 423 P.2d 72.

*Stanley L. Conroy*, for appellant.

*Robert E. Schillberg* and *Gerald R. Gates*, for respondent.

LANGENBACH, J.†—The defendant has appealed from his conviction of murder in the second degree.

His estranged wife was living separate and apart from him. She was working a late shift for an ambulance company in Everett. On October 24, 1964, she had parked her automobile across the street from her place of employment, where she habitually left it during working hours. It had been seen parked there at 8:30 and 9:30 that evening and again at 1:30, 3:50, 7:30 and 8 o'clock the next morning. Later in that morning, a fellow employee became alarmed over the automobile still parked there and looked into it. She saw a coat and a handbag. She examined the handbag which contained the woman's billfold and other personal

---

†Judge Langenbach is serving as a judge pro tempore of the Supreme Court pursuant to Art. 4, § 2(a) (amendment 38), state constitution.

effects, and took it into their place of employment. She also telephoned to the place where the wife lived and learned that she had not been home that night after work.

The police were notified; they searched the car and found a woman's shoes and the coat which she had worn to and from work the night before. An examination of the coat revealed a .30 caliber bullet hole in the right-hand pocket. Stains, which were later determined to be human blood, were discovered in the lining around the inside of the hole. The coat pockets contained her car keys and cigarettes.

The police went to defendant's residence but he was not there. Later they returned and he admitted them. After a short conversation, he agreed to accompany them to the police station for questioning. (He had denied all knowledge concerning his wife's disappearance.) The police advised him he had a right to counsel; that he need not make any statement to anyone and anything said could be used against him. He was placed under arrest.

The next day he retained counsel. In the presence of his attorney and the police, he was questioned. A stenographer recorded the interrogation. Later it was transcribed and read by the defendant and his attorney. It consisted of eight pages of questions and answers and was signed by defendant and two witnesses; he also initialed each page.

In this he admitted he had accidentally shot his wife. He stated they had lunched together during her evening work-break at 9 o'clock. After she finished work at midnight, they went to his residence. The shooting occurred when he went to a closet to get a jacket to wear when they were getting ready to go out again. As he reached in for the jacket, it became entangled with a 30.06 gun which fell to the floor. As he reached to pick up the rifle and jacket, the gun was discharged and the bullet struck his wife in the lower right groin. At the time she was shot, she was picking up the telephone.

He stated she was dead and he panicked. He picked up her body, placed it in his panel delivery truck and drove to a log dump and threw her body into the Snohomish River where the tide ebbs and flows. During this period of ques-

tioning, he did not remember everything. It was agreed by his attorney and the police that he would not be questioned further unless his attorney was present.

Prior to this interrogation, the police had gone to defendant's shop and found the 30.06 rifle with a live cartridge in its chamber. It was impounded. Apparently after the fatal shooting and the disposition of her body, defendant had returned the rifle to this shop. An employee testified it was usually kept in the shop. (An expert witness later made tests with the gun and the coat and stated, in his opinion, the bullet hole in the coat was made with this rifle.)

Scuba divers were dispatched to search this river at the place mentioned in the statement, but without success. They then asked a police officer to inquire of defendant, in jail, if he was sure where he had placed the body in the river and the color of the dress she was wearing. The officer proceeded to question the defendant about these two matters in the absence of his attorney. After answering these questions, the defendant volunteered further information, which the officer testified to at the trial.

In this voluntary statement, he said he was asleep on the couch when his wife came into the house and went straight to the kitchen. There she took off her watch and rings and laid them on the window sill, before washing her hands. Since they had planned to go some place, he went to the closet for his jacket. As he grabbed it, the jacket and the 30.06 rifle fell on to his foot. He quickly reached down and, as he picked them up, in some manner the gun was discharged. The bullet struck his wife in the right groin, as she stood between the telephone and the television set. He took off her coat and determined she was dead. Then he placed her body in the panel truck and drove down to the mill where he threw her body into the river. Thereafter he returned home, mopped up the blood from the floor and put her coat, shoes and purse into her car. He drove it back to her place of employment and parked it as usually parked and walked home.

In searching defendant's house, the police found his missing wife's watch and rings on the kitchen window sill.

Although she had worn them during her last day at work and always wore them, there was testimony that she always removed her watch and rings before washing her hands. Near the telephone and television set the police found stains on the floor and spattered on the front of the television set, which were later determined to be human blood by a police expert chemist.

Defendant's house is so constructed that the closet in question faces at least a 45 degree angle away from the place where the telephone is located, where the blood was found and where defendant admitted his wife was standing when she was shot. The closet doors opened outward.

A police officer testified that at about 3:10, the early morning of October 25, 1964, he observed defendant's panel truck on the road near the mill where defendant said he had thrown her body into the river. The identification of the truck was made through its license number which the officer had seen and written down as they passed in the prowl car.

There was testimony by the wife's former husband, in whose residence she was rooming, that she had not been home that night and he had not seen or heard of or from her from that date up to the time of the trial in May, 1965.

After a preliminary hearing, in the absence of the jury, concerning the written and oral statements of the defendant, they were admitted into evidence. The defendant himself did not testify. Based upon these facts and circumstances, the jury returned a verdict of guilty of murder in the second degree.

In his appeal, defendant made three assignments of error: (1) He was denied the right to and assistance of counsel when questioned the second time in jail. (2) The corpus delicti was not sufficiently established to justify the submission of the written and oral statements in evidence of the case to the jury. (3) The admission of the transcript of the oral statement into evidence was prejudicial.

■ 1. At the time defendant made his statement to the police, in jail, he had been charged with this crime. He knew he had a lawyer available to him. He made no re-

quest for counsel nor objection to questioning. The questions sought by the police were in confirmation of what he had already told them. The scuba divers wanted to be certain they were seeking the body in the right section of the river and what she was wearing.

*Massiah v. United States*, 377 U.S. 201, 12 L. Ed. 2d 246, 84 Sup. Ct. 1199 (1964), cited by defendant in support of this assignment is not apposite. There the defendant had been entrapped by a codefendant into an automobile in which a listening device had been placed. The conversation and statements elicited from him were heard by an officer in an adjacent automobile. On that basis, the officer's testimony was barred.

In the case at bar, there was little difference between the first written statement (made in his counsel's presence and with his approval) and the volunteered information on the second occasion (when his counsel was absent). What was stated in *State v. Young*, 65 Wn.2d 938, 940, 400 P.2d 374 (1965) is applicable and pertinent here:

> In the instant case, there was no secret or surreptitious interrogation. Young voluntarily made his statement to police officers after being permitted to consult with his counsel, and knowing he had a right to remain silent. The constitution grants an accused person a right to counsel. The exercise of the right, however, does not prevent the use of the accused's voluntary statements, made in the absence of his counsel and in disregard of his advice.

The action of the police officer in questioning the defendant further about the disposition of his wife's body violated the agreement that defendant would not be questioned in absence of counsel. This cannot be excused or condoned. However, in the light of the written agreement to the same effect as the information elicited by the police officer, the assignment of error as to this aspect of the case is without merit.

2. The question of establishing the corpus delicti is of more serious moment. The trial court admitted the written and oral statements into evidence with the express provi-

sion and understanding that they would be withdrawn and excluded if the corpus delicti was not proven.

■ The corpus delicti in a homicide case requires (1) the fact of death and (2) a causal connection between the death and a criminal agency, but the corpus delicti does not require proof of a causal relation between the death and the accused. *State v. Meyer,* 37 Wn.2d 759, 226 P.2d 204 (1951), and *State v. Little,* 57 Wn.2d 516, 358 P.2d 120 (1961). It can be established by either direct or circumstantial evidence. *State v. Anderson,* 10 Wn.2d 167, 116 P.2d 346 (1941), and *State v. Fry,* 39 Wn.2d 8, 234 P.2d 531 (1951).

■ The difficulty in the case at bar is the fact that the body of the victim was never found. Is the body or some part thereof required to establish the "fact of death" element in the corpus delicti? We think not. To require direct proof of the killing or the production of the body of the alleged victim in all cases of homicide would be manifestly unreasonable and would lead to absurdity and injustice.

The final test is whether the facts found and the reasonable inferences from them have proved the nonexistence of any reasonable hypothesis of innocence. All that is required to prove death is circumstantial evidence sufficient to convince the minds of reasonable men of the existence of that fact. The law employs the judgment of reasonable minds as the only means of arriving at the truth by inference from the facts and circumstances in evidence. If this were not true, an infinite number of crimes involving the elements of a specific intent would go unpunished.

The strict rule contended for by defendant would operate as a complete shield against punishment for his crime and afford him absolute immunity if he were cunning enough to destroy the body or otherwise conceal its identity. But the circumstances surrounding the disappearance of the victim must be such as to convince the mind to a moral certainty of death, and to the exclusion of every other reasonable hypothesis. See *People v. Clark,* 70 Cal. App. 531, 233 Pac. 980 (1925), and cases cited therein.

■ In establishing the corpus delicti, the confession of the person charged with the commission of the crime is not

sufficient, "but if there is independent proof thereof, such confession may then be considered in connection therewith and the *corpus delicti* established by a combination of the independent proof and the confession." The independent proof is "sufficient if it *prima facie* establishes the *corpus delicti.*" *State v. Meyer, supra,* at 763-4. Accord, *State v. Goranson,* 67 Wn.2d 456, 408 P.2d 7 (1965).

■ Although the independent evidence should generally establish the corpus delicti prior to the admission of the confession into evidence, the trial court has discretion to admit the confession upon the stipulation that it be corroborated by independent proof at a later time. It will be reversed only for a manifest abuse of such discretion. *State v. Toboyayon,* 188 Wash. 318, 62 P.2d 548 (1936), and *State v. Anderson, supra.*

■ The circumstantial evidence must be consistent with guilt and inconsistent with an hypothesis of innocence. The proof of the corpus delicti and the identity of the perpetrator of the offense must resolve the guilt of the defendant beyond a reasonable doubt. Here, the trial court did not abuse its discretion in allowing the admission of the oral and written statements prior to proof of the corpus delicti.

A motion challenging the sufficiency of the evidence of the opposing party admits the truth of such evidence and all reasonable inferences that can be drawn therefrom and the evidence will be interpreted against the movant and in a favored light for the opposing party. *State v. Goranson, supra,* p. 459.

The facts and circumstances which established the corpus delicti were overwhelming and convincing. The victim drove to her regular place of employment and parked her car according to habit. In the automobile were found her coat, shoes and handbag with its contents. Not only was this the same coat which she had worn the night before, but now it had a bullet hole from a .30 caliber rifle in the right-hand pocket, with human blood stains inside on the lining around the hole. Both were in the midsection of the coat.

After the defendant had been arrested, the police searched his house. The missing woman's rings and watch were found on the kitchen window sill. They were the same ones which she had worn to work the night before her disappearance. Human blood stains were found in the cracks in the floor near the telephone and television set. The closet, by which defendant admitted he was standing when the gun was discharged, faced at least a 45 degree angle away from the spots of blood. And the closet doors opened outward as an impediment.

A prowl car officer identified defendant's panel truck by its license number as having been in the immediate vicinity of the mill where he stated he had thrown her body. This panel truck had been seen there about 3 hours after his wife had finished work and had left her place of employment at midnight. The wife had not been seen or heard from since October 24, 1964, up to the time of trial in May, 1965.

The independent proof and evidence corroborated defendant's oral and written statements. Everything pointed unerringly and unmistakably in one direction—at the defendant himself as the criminal. The corpus delicti was completely established.

3. Defendant lastly contended the admission of his signed statement was reversible error. He argued that this statement was an admission (not a confession), and as such was a transcription merely of testimony, which was not admissible, but nevertheless went to the jury as an exhibit. In support of this proposition, he cited *State v. Gregory*, 25 Wn.2d 773, 171 P.2d 1021 (1946). In *Gregory*, however, the accused at all times denied the crime. On that basis, the transcribed statement was properly excluded.

However, in the case at bar, the signed statement contained an admission against interest. The defendant admitted shooting his wife and the precipitous disposition of her body, although he maintained that it was an accident. The trial court instructed the jury that it might consider the admissions, which included the signed statement as an exhibit. No exceptions were taken to any of the court's

instructions. The final factual determination was a question for the jury. There was no error in this assignment.

The defendant wove about himself an entangling web of incriminating circumstances from which the jury could extract not a single drop of the essence of innocence but only the bitter hemlock of complete guilt. The untimely and unexplainable disappearance of his wife was accounted for by the strange conduct of the defendant himself. Admittedly he was the last person to see her alive. His hasty actions in the immediate disposition of her body under cover of darkness and the stillness of the night, the stealthy return of her automobile to its accustomed parking place to avoid suspicion, the futile attempts to remove the blood stains in his premises, the return of his rifle to his workshop after the fatal shooting, all pointed convincingly to his criminal culpability.

The verdict reached by the jury was the only reasonable one possible under the undisputed facts and circumstances in the case.

The judgment and sentence of the trial court is affirmed.

HILL, ROSELLINI, HUNTER, and HALE, JJ., concur.