THE STATE OF OHIO, APPELLANT AND CROSS-APPELLEE, *v.* NICELY, APPELLEE AND CROSS-APPELLANT.

[Cite as State *v.* Nicely (1988), 39 Ohio St. 3d 147.]

(Nos. 87-672 and 87-701—Submitted May 17, 1988—Decided October 19, 1988.)

150

*Ronald L. Collins,* prosecuting attorney, for appellant and cross-appellee.

*Gottlieb, Johnson, Beam & Joseph* and *Miles D. Fries,* for appellee and cross-appellant.

MOYER, C.J. In this case, we are presented with the issue of whether a conviction for murder may be supported wholly by circumstantial evidence. For the following reasons, we hold that a murder conviction may be supported by such evidence and, accordingly, reverse the judgment of the court of appeals and reinstate the trial court's judgment.

Circumstantial evidence is defined as "[t]estimony not based on actual personal knowledge or observation of the facts in controversy, but of other facts from which deductions are drawn, showing indirectly the facts sought to be proved. * * *" Black's Law Dictionary (5 Ed. 1979) 221.

The state contends that the court of appeals abused its discretion by substituting its judgment for that of the jury regarding the weight and sufficiency of the evidence, because the verdict, guilty of murder, was supported by overwhelming circumstantial evidence. The state also argues that a homicide can be proven in an appropriate case even without the production of a body. The latter point is not in contention in this court, nor was it in the appellate court. It is well-established that murder can be proven in the absence of a body. See *Captain Green's Trial* (Scot. Adm. 1705), 14 How. St. Tr. 1199, 1246; *United States* v. *Gibert* (C.C. Mass. 1834), 2 Sumn.

19, 27-28, 25 Fed. Cas. 1287, 1290; *The King* v. *Hindmarsh* (1792), 2 Leach 569, 168 Eng. Rep. 387; *United States* v. *Williams* (C.C. Me. 1858), 1 Cliff. 5, 28 Fed. Cas. 636; *People* v. *Cullen* (1951), 37 Cal. 2d 614, 234 P. 2d 1; *People* v. *Scott* (1959), 176 Cal. App. 2d 458, 1 Cal. Rptr. 600; *State* v. *Dudley* (1969), 19 Ohio App. 2d 14, 25, 48 O.O. 2d 19, 26, 249 N.E. 2d 536, 543. The challenge to the conviction here is that it is based on circumstantial evidence.

The defendant was charged with aggravated murder under R.C. 2903.01. He was convicted of the lesser included offense of murder under R.C. 2903.02. R.C. 2903.02 provides:

"(A) No person shall purposely cause the death of another.

"(B) Whoever violates this section is guilty of murder, and shall be punished as provided in section 2929.02 of the Revised Code."

The court of appeals directed its review to the question of whether the circumstantial evidence at trial was sufficient to establish either the *corpus delicti* or the essential elements of murder. Specifically, the court of appeals concluded that the proof of death was not established by the evidence presented. The court of appeals therefore concluded that a conviction for murder could not be based wholly upon circumstantial evidence, although it did find that such evidence was substantial enough to support a conviction of felonious assault, concluding that the aggressor was indeed the defendant and the victim, his wife.

We are not unmindful of the historical concern by the Anglo-American system of justice for the danger of erroneous murder convictions. Periodically, a victim presumed dead will later appear after the "guilt" of the defendant has been determined. Perkins, The Corpus Delicti of Murder (1962), 48 Va. L. Rev. 173, 173-176. See, also,

*State* v. *Maranda* (1916), 94 Ohio St. 364, 370, 114 N.E. 1038, 1040.

It is, however, well-settled under Ohio law that a defendant may be convicted solely on the basis of circumstantial evidence. *State* v. *Kulig* (1974), 37 Ohio St. 2d 157, 66 O.O. 2d 351, 309 N.E. 2d 897; *State* v. *Hankerson* (1982), 70 Ohio St. 2d 87, 24 O.O. 3d 155, 434 N.E. 2d 1362, certiorari denied (1982), 459 U.S. 870; *State* v. *Kamel* (1984), 12 Ohio St. 3d 306, 12 OBR 378, 466 N.E. 2d 860. "* * * [P]roof of guilt may be made by circumstantial evidence as well as by real evidence and direct or testimonial evidence, or any combination of these three classes of evidence. All three classes have equal probative value, and circumstantial evidence has no less value than the others. 1A Wigmore, Evidence (Tillers Rev. 1983) 944, Section 24 *et seq.*" *State* v. *Griffin* (1979), 13 Ohio App. 3d 376, 377, 13 OBR 458, 460, 469 N.E. 2d 1329, 1331. "Circumstantial evidence is not less probative than direct evidence, and, in some instances, is even more reliable." *United States* v. *Andrino* (C.A.9, 1974), 501 F. 2d 1373, 1378.

However, this court in *State* v. *Kulig, supra,* syllabus, held that "[c]ircumstantial evidence relied upon to prove an essential element of a crime must be irreconcilable with any reasonable theory of an accused's innocence in order to support a finding of guilt." The court further concluded that "* * * [i]t is settled that where circumstantial evidence alone is relied upon to prove an element essential to a finding of guilt, it must be consistent only with the theory of guilt and irreconcilable with any reasonable theory of innocence. * * *" *Id.* at 160, 66 O.O. 2d at 352, 309 N.E. 2d at 899.

Having concluded that an accused may be convicted of a crime wholly on the basis of circumstantial evidence, we now turn to the issue of whether such evidence is sufficient to fulfill the evidentiary requirements necessary to prove the *corpus delicti* or essential elements of murder. The concept of *corpus delicti* is well-established in the common law. *Corpus delicti,* or body of the crime, arose through genuine concern that no person be charged with a crime he or she did not commit unless the court is satisfied (1) that a criminal act has occurred, and (2) that criminal intent to commit the act existed. See 21 American Jurisprudence 2d (1981) 262-265, Criminal Law, Sections 129-130; LaFave & Scott, Handbook on Criminal Law (1972), Section 24; Perkins, *supra,* at 178. See, also, *State* v. *Maranda, supra*; McCormick on Evidence (3 Ed. 1984) 366-367, Section 145.

This court defined *"corpus delicti"* in *State* v. *Edwards* (1976), 49 Ohio St. 2d 31, 3 O.O. 3d 18, 358 N.E. 2d 1051, paragraph 1a of the syllabus, as follows: "The *corpus delicti* of a crime is the body or substance of the crime, included in which are usually two elements: (1) the act and (2) the criminal agency of the act." More specifically, we defined the *corpus delicti* of murder in *State* v. *Manago* (1974), 38 Ohio St. 2d 223, 67 O.O. 2d 291, 313 N.E. 2d 10, paragraph one of the syllabus: "The *corpus delicti,* meaning the body or substance of the crime charged, in a homicide prosecution involves two elements, *i.e.* (1) the fact of death and (2) the existence of the criminal agency of another as the cause of death." In considering these definitions of *"corpus delicti,"* it is important to understand that *corpus delicti* does not mean a dead body and that proof of the *corpus delicti* of murder does not require production of a dead body. See *State* v. *Dudley, supra,* at 20-21, 48 O.O. 2d at 23-24, 249 N.E. 2d at 541.

The difficulty with the case at bar,

however, *is* the absence of a body as an element of the crime. Death of the alleged victim, one of the elements of murder, then can only be proven through the use of circumstantial evidence. A very similar Ohio case, *State* v. *Dudley, supra,* involved a defendant who was found guilty of assault with intent to kill even though the victim's body was never found and the accused never made a confession. The victim was a night watchman at an industrial plant who, after failing to make his required reports, was found missing. The facts of the case and the case at bar are significantly similar. The only trace of the victim was his blood-stained hat. Blood was also found inside and outside the plant building and along the nearby sidewalk. The defendant's car had evidence of blood stains on the outside and in the front and rear seats. A crowbar from the car was also covered with the same type of blood.

The court in *Dudley,* citing *United States* v. *Williams, supra,* at 643, stated that " '* * * it [the *corpus delicti* of the crime] may be proved by direct evidence, or where such does not exist, it may be proved by cogent circumstances, provided they are sufficient to produce conviction on the mind of the jury and to exclude every reasonable doubt. It must be so, else the laws for the punishment of felonious homicide are insufficient to reach the secret offender, provided he has the opportunity and employs the means to destroy the body.' " *State* v. *Dudley, supra,* at 21, 48 O.O. 2d at 24, 249 N.E. 2d at 541.

The *Dudley* court continued, stating that "* * * [i]n fact, under present day concepts, production of a 'body' is not absolutely essential to convict, even in a murder case." *Id.* at 25, 48 O.O. 2d at 26, 249 N.E. 2d at 543.

Courts in other jurisdictions have recognized the use of circumstantial evidence to establish the *corpus delicti* of murder. *People* v. *Scott, supra,* is the seminal case in this area of the law. The court in *Scott* was the first American court to find that circumstantial evidence alone was enough to prove the elements of the *corpus delicti* of murder.[1] In *Scott,* there was no evidence of violence or other means of death used upon the alleged victim and no body or part of a body was found. However, the victim's two pairs of glasses and a denture were discovered behind the defendant's and the alleged victim's home. In affirming the defendant's conviction for murder, the California district court of appeals referred to the following circumstantial evidence as proof of death: (1) the victim was in good physical and mental health prior to her disappearance and had numerous friends with whom she communicated on a regular basis; (2) the victim would not have left home without her eyeglasses and her denture; (3) if the victim had intended to leave home she would have taken money, baggage and a wardrobe; (4) it would have been impossible for the victim to conceal herself for several years and find a way to live without drawing upon her bank accounts; (5) the defendant had a motive for killing his wife —

---

[1] For earlier British Commonwealth cases holding that circumstantial evidence proving the fact of death as an element of the *corpus delicti* of murder in the absence of a body is legally sufficient to sustain a criminal conviction, see *Regina* v. *Onufrejczyk* (C.C.A. 1955), 1 Q.B. 388; *Rex* v. *McNicholl* (Cr. Ca. R. 1917), 2 Ir. R. 557; and *The King* v. *Horry* (1952), N.Z.L.R. 111.

to give himself a chance to steal her money through the forgery of her name on many documents; (6) the defendant had previously persuaded his wife to convert her securities into cash to make it easier for him to obtain her property through forgeries; and (7) every act and statement of the defendant after the disappearance of his wife was consistent only with knowledge that his wife was dead. *Id.* at 498-499, 1 Cal. Rptr. at 624-625. The defendant had told conflicting stories to explain her disappearance, forged her name on checks, and obtained large sums of her money.

Commenting on the use of circumstantial evidence to prove the death of the victim, the court in *Scott* at 494, 1 Cal. Rptr. at 621-622, citing *The King* v. *Horry, supra,* stated: " '* * * There may be other facts so incriminating and so incapable of any reasonable explanation as to be incompatible with any hypothesis other than murder * * * that the circumstantial evidence should be so cogent and compelling as to convince a jury that upon no rational hypothesis other than murder can the facts be accounted for. * * * [I]t was competent for the jury to infer the fact of death from the whole of the evidence as a matter of moral certainty leaving no ground for reasonable doubt. * * *' " The court in *Scott* concluded: "* * * [T]he circumstantial evidence of the fact of death by criminal means was as strong and convincing as a confession would have been and much stronger than a confession of questionable validity." *Id.* at 496, 1 Cal. Rptr. at 623. Other courts have followed the *Scott* decision.

In the case of *People* v. *Cullen, supra,* the Supreme Court of California was presented with facts similar to both those in *State* v. *Dudley, supra,* and the case before us. The *Cullen* court stated:

"It is not necessary in order to support the conviction that the bodies actually be found * * *. * * * [T]o require direct and positive proof of the corpus delicti would be most unreasonable; * * * [t]he worst crimes are naturally committed at chosen times, in darkness and secrecy; * * * human tribunals must act upon indications as the circumstances admit; * * * more often than not the attendant and surrounding facts remove all mystery and supply that degree of certainty men are daily accustomed to regard as sufficient in the most important concerns of life." *Id.* at 624, 234 P. 2d at 6-7.

The Supreme Court of Washington, in *State* v. *Lung* (1967), 70 Wash. 2d 365, 423 P. 2d 72, was presented with a similar situation in that the body of the victim was never found. The facts and circumstances of the case were stated by that court to be "overwhelming and convincing." *Id.* at 372, 423 P. 2d at 77. There is a striking similarity with the present case. In *Lung,* the victim's car was found across the street from her regular place of employment. Her coat, shoes and purse containing its contents were found in the car. She had worn the same coat the night before, yet there came to be a bullet hole with blood stains around it on the midsection of the coat. The victim's rings and watch, which she had been wearing the previous day, were found in the defendant's house. Human blood stains were found on the floor and on the television set.

The court in *State* v. *Lung, supra,* posed the issue as follows: "Is the body or some part thereof required to establish the 'fact of death' element in the corpus delicti? We think not. To require direct proof of the killing or the production of the body of the alleged victim in all cases of homicide would be manifestly unreasonable and would

lead to absurdity and injustice." *Id.* at 371, 423 P. 2d at 76. The threshold of sufficiency of evidence can be met if "the entire circumstances point with one accord to the death of the person alleged to have been murdered, the finding of fragments of a human body or of metallic articles which are positively identified as part of the body of the alleged victim, *or as articles worn by him* [emphasis added], will be sufficient, if believed by the jury, to establish the fact of death, when this is the best evidence that can be obtained under the circumstances. *People v. Alviso,* 55 Cal. 230; *McCulloch v. State,* 48 Ind. 109; *Commonwealth v. Webster,* 5 Cush. 295 (52 Am. Dec. 711); *State v. Williams,* 52 N.C. 446 (78 Am. Dec. 248); *Gray v. Commonwealth,* 101 Pa. 380 (47 Am. Rep. 733)." *State v. Williams* (1905), 46 Ore. 287, 297, 80 P. 655, 659-660.

See, also, *Derring v. State* (1981), 273 Ark. 347, 353, 619 S.W. 2d 644, 647; *People v. McMonigle* (1947), 29 Cal. 2d 730, 177 P. 2d 745; *State v. Pyle* (1975), 216 Kan. 423, 532 P. 2d 1309; *Commonwealth v. Burns* (1963), 409 Pa. 619, 187 A. 2d 552; *State v. Owens* (S.C. 1987), 359 S.E. 2d 275; *Kugadt v. State* (1898), 38 Tex. Crim. 681, 44 S.W. 989; *Epperly v. Commonwealth* (1982), 224 Va. 214, 294 S.E. 2d 882. The foregoing are all cases in which courts have held that circumstantial evidence was sufficient to prove death and sustain homicide convictions.

Defendant attempts to distinguish *Cullen, Derring, Lung* and many of the other cited cases by arguing that in all those cases the defendant gave a confession or made admissions or other incriminating statements. The defendant asserts that while a homicide conviction based on circumstantial evidence of death in conjunction with a confession is well-established in Ohio, a homicide conviction based wholly on circumstantial evidence is unprecedented. See, *e.g., State* v. *Scarberry* (1961), 14 Ohio App. 85, 18 O.O. 2d 394, 180 N.E. 2d 631; *State* v. *Black* (1978), 54 Ohio St. 2d 304, 8 O.O. 3d 296, 376 N.E. 2d 948. A confession, admission, or incriminating statement, however, is only secondary evidence. The *corpus delicti* of the crime must still be independently proved. "The necessity of independently proving the *corpus delicti* to render an extrajudicial confession admissible is well-established. *State* v. *Maranda,* 94 Ohio St. 364 (1916). * * * 'It is sufficient if there is *some* evidence outside of the confession that tends to prove *some* material element of the crime charged.' (Emphasis *sic.*)" *State* v. *Black, supra,* at 307, 8 O.O. 3d at 297, 376 N.E. 2d at 951, citing *State* v. *Maranda, supra,* at paragraph two of the syllabus. In *Derring* v. *State, supra,* at 354, 619 S.W. 2d at 648, the court stated that "independent of the confessions, there was substantial circumstantial evidence of the *corpus delicti, i.e.,* that there was in fact a death and that the deceased came to his death by the fact of one other than himself. Its weight and sufficiency was for the jury." We consider the presence of a confession, admission, or incriminating statement to be a distinction without a difference.

Furthermore, we know of no reason that the crime of murder should be treated any differently from other crimes when considering the use of circumstantial evidence to establish their commission. Given the extensive precedent in Ohio on the use of circumstantial evidence to prove the commission of a crime and the abundant case law in other jurisdictions on the use of such evidence in homicide prosecutions, we hold that in the absence of a human body, a confession, or other di-

rect evidence of death, circumstantial evidence alone may be sufficient to support a conviction for murder.

We next turn to the question of whether the evidence presented in this case was sufficient to support the defendant's conviction for the murder of his wife. The test to determine sufficiency of evidence in order to establish the *corpus delicti* of the crime is whether reasonable minds can reach different conclusions on the issue of whether the defendant is guilty beyond a reasonable doubt. *State* v. *Black, supra,* at 308, 8 O.O. 3d at 298, 376 N.E. 2d at 951, citing *State* v. *Swiger* (1966), 5 Ohio St. 2d 151, 165, 34 O.O. 2d 270, 278, 214 N.E. 2d 417, 427. Although it is not ordinarily the function of this court to weigh evidence, it may do so in order to determine whether that evidence is of sufficient probative force to support a finding of guilt for conviction in a criminal case. *State* v. *Kulig, supra; State* v. *Murphy* (1964), 176 Ohio St. 385, 27 O.O. 2d 354, 199 N.E. 2d 884; *State* v. *Petro* (1947), 148 Ohio St. 473, 36 O.O. 152, 76 N.E. 2d 355; *Atkins* v. *State* (1926), 115 Ohio St. 542, 155 N.E. 189.

At trial, the state presented the following circumstantial evidence tending to prove the death of Jeannie Nicely through the criminal acts of the defendant. First, there was extensive testimony by family and friends that no one has seen or heard from Jeannie since April 23, 1985. "Worldwide communication and travel today are so facile that a jury may properly take into account the unlikelihood that an absent person, in view of his health, habits, disposition, and personal relationships would voluntarily flee, 'go underground,' and remain out of touch with family and friends. The unlikelihood of such a voluntary disappearance is circumstantial evidence entitled to weight equal to that of bloodstains and concealment of evidence." *Epperly* v. *Commonwealth, supra,* at 228-229, 294 S.E. 2d at 890. Given the close relationships the victim held with her daughters, parents, and friends, it is unlikely that she would voluntarily disappear and not contact them.

Second, defendant was apparently the last person to have seen the victim prior to her disappearance.

Third, the victim left her purse with medications, money, identification and other personal items at her place of work. It is unlikely that such personal possessions would have been left behind if she had voluntarily left her husband.

Fourth, defendant and the victim had experienced a stormy marital relationship, living together only three of the six years they were married.

Fifth, defendant's actions subsequent to the victim's disappearance were indicative of a consciousness of guilt. Defendant attempted to conceal the whereabouts of Jeannie's car. He told both of Jeannie's daughters and the sheriff's department that the car had broken down near New Philadelphia and that he had left it there. He later admitted to a witness that he had abandoned the car where it was found and had removed the license plates from the car. Further, defendant attempted to conceal the fact that his father had accompanied him to the location where he had abandoned the car. Additionally, while in the Tuscarawas County Jail, defendant had the following telephone conversation with his mother:

"NICELY: * * * they've got Man Arrested for Murdering His Wife.
"* * *
"MOM: Well how could — well, why, did they find her?
"NICELY: No, not yet.
"* * *

"NICELY: Ya, Dad ever change his tires.

"MOM: Hum, not yet.

"NICELY: Tell him he better.

"MOM: Un-huh — all right, just the back one?

"NICELY: Tell him to change them all.

"MOM: All right.

"NICELY: They're ready to blow out.

"MOM: All right.

"NICELY: He'll get hurt.

"MOM: Ah.

"NICELY: You know what I mean?

"MOM: On that blue one?

"NICELY: No, on his truck.

"MOM: Oh, why, they no good?

"NICELY: No, mom, change them.

"MOM: Oh, okay, all right. Oh, boy. I didn't know they allowed you to talk.

"NICELY: Ya, ya, they got me charged with aggravated murder.

"* * *

"NICELY: Make sure he changes them tires."

Sixth, defendant had made a prior threat to kill Jeannie.

Seventh, the state presented testimony by several of the investigating officers and forensic experts regarding the presence of blood in the defendant and victim's trailer home and the abandoned car. One expert witness testified that the amount of blood found in the home was "a large amount," "a very substantial amount," "[l]arge amounts," and a "pool." Further expert testimony indicated that the blood from the couch inside the trailer home was human blood and the same type as Jeannie's. Additional testimony indicated that blood identified as Jeannie's was found inside the abandoned car. The defense presented contradictory expert testimony concerning the

blood typing and evidence that the defendant had used the car to carry animals he had killed while hunting. It was, however, the jury's duty to weigh the evidence.

Eighth, items from the car were found along the river bank and in the river near the abandoned car. Several of Jeannie's personal possessions, including the purple robe she always wore, a blanket she kept on her bed, and an old blanket she stored in a closet were found in a bag weighted down by concrete in Wills Creek near the abandoned car. A hole was located in the back neck area of the robe.

Ninth, a blood spot on the leg of the defendant's trousers which were removed from him at the time of his arrest was Jeannie's type and not the defendant's.

Our review of the record indicates that there was sufficient probative evidence from which reasonable minds could conclude, as did the jury at trial, that Jeannie Nicely is dead and that the defendant purposely caused her death. "The fact that a murderer may successfully dispose of the body of the victim does not entitle him to an acquittal. That is one form of success for which society has no reward." *People v. Manson* (1977), 71 Cal. App. 3d 1, 42, 139 Cal. Rptr. 275, 298, certiorari denied (1978), 435 U.S. 953.

Our review of the record causes us to conclude that the jury did not err in finding that there was no reasonable theory of innocence upon which defendant could be found not guilty of the crime of murder.

For the foregoing reasons, we hold that where substantial credible evidence upon which a jury has based its verdict is presented both as to guilt and also as to the *corpus delicti* of the crime, a reviewing court abuses its discretion by substituting its judgment for that of the jury as to the weight and sufficiency of the evidence.

Accordingly, the judgment of the court of appeals is reversed and the judgment of the trial court is reinstated.

*Judgment reversed.*

SWEENEY, LOCHER, HOLMES, DOUGLAS, WRIGHT and H. BROWN, JJ., concur.