OPINION
On October 5, 2000, a jury found Defendant-Appellant Earl W. Holland guilty of robbery and felonious assault of a peace officer as charged in the indictment. Holland has challenged his convictions on appeal raising the following assignments of error:
 The trial court erred by failing to discharge Defendant in accordance with § 2945.73(B) of the Ohio Rules of Civil Procedure [sic].
 The jury's verdict in connection with the charge of aggravated robbery [sic] is against the manifest weight of the evidence.
 Appellant's convictions are against the manifest weight of the evidence.
 I
On September 29, 2000, the Friday before trial began, Holland filed a motion to dismiss claiming his speedy trial rights had been violated. Pursuant to R.C. 2945.71(C)(2), an individual charged with a felony must be brought to trial within two hundred and seventy days after his arrest. Moreover, each day the individual spends in jail counts as three days, thereby reducing the time in which a defendant must be tried to ninety days. R.C. 2945.71(E). Holland was arrested in this case on March 17, 2000, and remained incarcerated until the trial commenced on October 2, 2000. He spent a total of two hundred days in jail between these two dates.
However, R.C. 2945.72 provides several grounds for extending the time requirements of R.C. 2945.71. The following subsections are relevant to this case:
 (C) Any period of delay necessitated by the accused's lack of counsel, provided that such delay is not occasioned by any lack of diligence in providing counsel to an indigent accused upon his request as required by law;
 (E) Any period of delay necessitated by reason of a plea in bar or abatement, motion, proceeding, or action made or instituted by the accused;
 (H) The period of any continuance granted on the accused's own motion, and the period of any reasonable continuance granted other than upon the accused's own motion.
The defense asked for a continuance of a pre-trial conference from April 4 to April 11, which extended the time seven days according to subsection (H). On April 25, defense counsel informed the court that he had been disqualified from the practice of law and therefore must be removed from the case. New counsel was appointed on May 2, amounting to seven more days of extension under subsection (C) for the accused's lack of counsel. On May 4, the defense filed a motion to suppress, which was overruled on August 17. The hundred and six days that elapsed while the motion was pending should also extend the total pursuant to subsection (E). Therefore, the ninety days allowed under R.C. 2945.71(E) should be extended by a hundred and twenty days for a total of two hundred and ten. The two hundred days that elapsed between arrest and trial is therefore sufficient to satisfy the requirements of R.C. 2945.71. Accordingly, Holland's speedy trial rights were not violated, and this assignment of error is overruled.
 II
In his second and third assignments of error, Holland has claimed that his convictions were against the manifest weight of the evidence. For ease of discussion, we will address these assignments together. The facts of the case are as follows.
At 2:15 A.M. on January 15, 2000, Dayton Police Officer Daniel Williger was driving down Keowee street in a police evidence van when he witnessed two individuals crouching in front of Tuffy Brooks Sporting Goods Store. With him in the van was Officer Thomas Shobe of the Fairfield Police Department, who was riding along to learn about the job of an evidence technician. When Williger saw the individuals, he made a u-turn on Keowee and jumped the curb in front of the building. Both Williger and Shobe saw an individual rounding the corner of the building heading toward the parking lot on the south side. This was only a matter of seconds after Williger had seen two individuals crouched in front of the store, and only a few feet away. The officers followed this individual in the van as he quickly traveled down the south wall of the store in the parking lot. When the individual reached the first parked vehicle, the officers jumped out to pursue him on foot.
The individual rounded the first parked vehicle and entered the driver's side door as the officers approached yelling, "Stop, police!" Officer Williger drew his weapon and banged on the driver's window trying to either break the window or convince the individual to exit the car. Simultaneously, Officer Shobe was on the passenger side of the car, but remained some distance away because he detected someone in the backseat of the vehicle. He advised Officer Williger the person was there. The suspect then started the ignition as Williger managed to get the door open. While wedged in between the open driver's door and the car, the driver put the car in reverse and accelerated, knocking Williger to the ground and dragging him several feet. When the driver put the car in forward gear, Williger managed to roll away and avoid being drug or run over as the vehicle pulled away. Officer Williger quickly stood up and chased the vehicle, obtaining the temporary tag number.
Meanwhile, while the vehicle was driving away, Officer Shobe noticed an object flying through the air toward the suspect car. He looked to where the object originated and found an individual that he ordered to the ground. It was soon discovered that this man, Terry Tipton, had witnessed the incident, but was not involved. Instead, he was arriving at work at that time for the post office across the parking lot. He threw the object in an attempt to stop the vehicle.
Other police officers soon arrived at the scene and Officer Williger was transported to the hospital for his injuries. He sustained severe cuts and abrasions to his face and knee, and a sprained thumb.
Through the tag number Officer Williger obtained, it was determined that the vehicle belonged to Larry Houston, who owned a junkyard. Some officers visited his residence shortly after the incident and questioned him about the car. They all traveled to his junkyard and found the vehicle there, but with fresh damage. Houston advised that he did own the vehicle, but he had not had the key for several days. An individual known only as "Red," an acquaintance, had been interested in buying the car, so Houston allowed him to drive it a couple times. Additionally, Red had been sleeping in the car. Following the second time Red drove the vehicle, the key came up missing. Consequently, Houston locked up the car and took the battery out. Red had consistently denied having the key in response to Houston's accusations.
Although Houston was not aware of Red's true name, he accompanied an officer to the police station to help them discover his identity. An officer entered Red's description into the computer as relayed by Houston, and six pictures at a time appeared on the screen. In the third set of six pictures, Houston pointed to one and said, "that's him." It was a picture of Holland.
Thereafter, the officers assembled a photo spread including Holland and five other men with similar characteristics. This photo spread was shown to Officer Williger, who could not identify a suspect, and Officer Shobe and Terry Tipton, both of whom identified Holland as the individual who drove the vehicle that drug Officer Williger.
There was a great deal of discussion at trial about the lighting in the parking lot where the incident occurred. The Tuffy Brooks building had a security light on the southwest corner and there was a street light on Keowee just off the southeast corner of the building. In addition, the evidence van stopped approximately thirty feet from the suspect vehicle with its headlights on. Although the headlights did not aim directly at the vehicle, the van was facing west, and the vehicle was to the northwest of the van. Therefore, the headlights could have at least partially illuminated the suspect and the vehicle.
Also at the scene, the front window of Tuffy Brooks had been busted out and clothes were strewn all over in front of the store toward the side parking lot, in the direction the suspect had traveled.
There were several minor discrepancies in the testimony pointed out by the defense. Officers Williger and Shobe testified they were traveling different directions on Keowee Street prior to the incident. Officer Shobe and Terry Tipton testified that the suspect ran around opposite ends of the car to reach the driver's door. The physical descriptions given by the witnesses who identified Holland were also different, however both Tipton and Shobe separately picked Holland out of the photo spread.
When reviewing a manifest weight claim, the appellate court "reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Thompkins (1997),78 Ohio St.3d 380, 387. Nevertheless, because the jury was able to view the witness' testimony, its determination of witness credibility should be afforded substantial deference. State v. Lawson (Aug. 22, 1997), Montgomery App. No. 16288, unreported, at p. 4. A verdict should only be overturned in extraordinary situations when evidence weighs heavily against the conviction. Thompkins, supra.
Holland argues that the state did not present evidence to prove beyond a reasonable doubt all of the elements of robbery. To prove robbery, the state was required to show that with the purpose to deprive the owner of his goods, Holland knowingly obtained or exerted control over property without the owner's consent, and in the process of committing the theft or in fleeing therefrom, inflicted, attempted to inflict or threatened to inflict physical harm on Officer Williger. Specifically, Holland challenges that the state did not prove he knowingly obtained or exerted control over property.
It is true that none of the witnesses testified to seeing any objects in the suspect's hand as he came around the front of the building. However, Officer Williger testified that he saw two people crouched in front of the store, and then just seconds later saw the suspect a few feet away rounding the corner of the building. Furthermore, the evidence demonstrated that the front window of the store was busted out, and clothes from the store were strewn in the direction of the parking lot where the suspect was seen. So, although there was no direct evidence that the suspect exerted control over the property, this evidence does constitute circumstantial evidence of that element. Circumstantial evidence is defined as "[t]estimony not based on actual personal knowledge or observation of the facts in controversy, but of other facts from which deductions are drawn, showing indirectly the facts sought to be proved." State v. Nicely (1988), 39 Ohio St.3d 147, 150. Moreover, it is well established that circumstantial evidence inherently possesses the same probative value as direct evidence. State v. Treesh (2001),90 Ohio St.3d 460, 485. The circumstantial evidence in this case supports a finding that the suspect involved did commit a robbery offense.
Holland further alleges the state did not prove his identity as the suspect. The tag number of the suspect vehicle was traced to the owner, who recognized Earl Holland's picture as the individual he believed had the only key to the suspect vehicle. Furthermore, two separate witnesses who were at the scene selected his picture out of a photo spread. Regardless of how good the lighting was, or minor discrepancies in their testimony, this evidence supports the jury's finding that Holland in fact was the suspect at the scene. Therefore, the decisions to convict him of both robbery and felonious assault were not against the manifest weight of the evidence. Accordingly, Holland's second and third assignments of error are overruled.
Judgment affirmed.
WOLFF, P.J., and YOUNG, J., concur.