# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| STATE OF WASHINGTON, | No.  46753-4-II |
| Respondent, | UNPUBLISHED OPINION |
| v. | |
| ROBERT LEONARD, | |
| Appellant. | |

BJORGEN, A.C.J. — Robert Leonard appeals his conviction for communication with a minor for immoral purposes and the legal financial obligations (LFOs) imposed on him at sentencing.  He argues that (1) his defense counsel was ineffective for failing to raise the issue of corpus delicti, (2) his defense counsel was ineffective for failing to have him mentally evaluated, while relying on a mental deficiency defense, (3) the trial court erred when it concluded that he had knowingly, intelligently, and voluntarily waived his *Miranda*[1] rights, and (4) the sentencing court improperly imposed LFOs, including a discretionary jury demand fee, without first inquiring into his ability to pay.

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

We hold that Leonard does not show ineffective assistance of counsel because (1) the State produced enough independent evidence at trial to satisfy the corpus delicti, and, therefore, defense counsel was not deficient for failing to object, and (2) it was a legitimate trial tactic in this case not to investigate a mental illness, yet to rely on a mental deficiency defense. We also hold that (3) the trial court's findings of fact, which are supported by substantial evidence, support its conclusion of law that Leonard knowingly, intelligently, and voluntarily waived his *Miranda* rights, and (4) the sentencing court improperly imposed the $250 jury demand fee.

Accordingly, we affirm Leonard's conviction, reverse the jury demand fee as well as any other discretionary LFOs, and remand for the sentencing court to strike the jury demand fee, any other discretionary LFOs, and to comply with *State v. Blazina*, 182 Wn.2d 827, 344 P.3d 680 (2015) before imposing any discretionary LFOs.

FACTS

Leonard and C.H., a minor, met on an online chat room via truckersucker.com. They talked with each other for a little over a year through telephone, e-mail, and text messages. The majority of the messages concerned performing sexual acts on themselves and their desires to perform sexual acts on each other. Eventually, C.H.'s mother found their conversations on C.H.'s cell phone. As a result, police investigated Leonard, who subsequently admitted that he had sexual communications with C.H. and that he knew C.H. was a minor. Leonard also admitted to having sexual relationships with two other minor boys. However, one was discovered to be an adult and the other was never found.

The State charged Leonard with communication with a minor for immoral purposes for his interactions with C.H. Leonard opted for a bench trial. Leonard's incriminating statements

were admitted at his bench trial after a CrR 3.5 hearing. The trial court found that he had not

been coerced into giving the confessions and that he waived his rights. Based on those findings,

in part, the court concluded that he knowingly, intelligently, and voluntarily waived those rights.

In addition to admitting Leonard's confessions, the trial court heard the testimony of C.H.,

C.H.'s mother, and the police officers who investigated Leonard. The trial court found Leonard

guilty as charged. At sentencing, the trial court imposed mandatory and discretionary LFOs,

including a $250.00 jury demand fee, for a total amount of $3,742.16. Leonard appeals.

ANALYSIS

I. INEFFECTIVE ASSISTANCE OF COUNSEL

Leonard argues that he received ineffective assistance of counsel because his trial counsel

failed (1) to object and raise the issue of corpus delicti[2] and (2) to investigate whether Leonard

had a mental illness, yet relied on that possibility as a defense. We disagree.

1.      Legal Principles

This court reviews claims of ineffective assistance of counsel de novo. *State v. Sutherby*,

165 Wn.2d 870, 883, 204 P.3d 916 (2009). To prevail on an ineffective assistance of counsel

claim, the defendant must show both that (1) defense counsel's representation was deficient and

(2) the deficient representation prejudiced the defendant. *State v. Grier*, 171 Wn.2d 17, 32-33,

246 P.3d 1260 (2011), *cert. denied*, 135 S. Ct. 153 (2014). If a defendant fails to establish either

prong, this court need not inquire further. *State v. Hendrickson*, 129 Wn.2d 61, 78, 917 P.2d 563

---

[2] The State argues that Leonard waived his corpus delicti argument because he did not object at trial. Leonard did not raise this issue at trial. However, because he argues that his counsel ineffectively represented him by failing to raise the corpus delicti issue in the trial court, this is a constitutional issue that he can raise for the first time on appeal. RAP 2.5(a); *State v. Page*, 147 Wn. App. 849, 855, 199 P.3d 437 (2008).

(1996). Representation is deficient "if it falls 'below an objective standard of reasonableness.'" *Grier*, 171 Wn.2d at 33 (quoting *Strickland v. Washington*, 466 U.S. 668, 688, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)). Prejudice exists if there is a reasonable probability that except for counsel's errors, the result of the proceeding would have differed. *Id.* at 34.

We begin with a strong presumption that counsel's representation was effective. *Id.* at 33. To demonstrate deficient performance, the defendant must show that, based on the record, there were no legitimate strategic or tactical reasons for the challenged conduct. *State v. Emery*, 174 Wn.2d 741, 755, 278 P.3d 653 (2012). The law affords trial counsel wide latitude in the choice of tactics. *In re Pers. Restraint of Stenson*, 142 Wn.2d 710, 736, 16 P.3d 1 (2001). Legitimate trial strategy or tactics cannot serve as the basis for a claim of ineffective assistance of counsel. *State v. Kyllo*, 166 Wn.2d 856, 863, 215 P.3d 177 (2009).

2.      Corpus Delicti

Leonard first argues that there is insufficient independent evidence to prove the corpus delicti and that he received ineffective assistance of counsel due to his attorney's failure to object and raise this issue at trial. We disagree.

"Corpus delicti means the 'body of the crime' and must be proved by evidence sufficient to support the inference that there has been a criminal act." *State v. Brockob*, 159 Wn.2d 311, 327-30, 150 P.3d 59 (2006) (quoting *State v. Aten*, 130 Wn.2d 640, 655, 927 P.2d 210 (1996)). A defendant's incriminating statement alone is not sufficient to establish that a crime took place. Rather, the State is required to present evidence that is independent of the defendant's incriminating statement and that corroborates the specific crime described in the incriminating statement. *Id.* at 327-30.

In determining whether there is sufficient independent evidence, we review the evidence in the light most favorable to the State. *Id.* "The independent evidence need not be sufficient to support a conviction, but it must provide prima facie corroboration of the crime described in a defendant's incriminating statement." *Id.* (emphasis omitted). "Prima facie corroboration of a defendant's incriminating statement exists if the independent evidence supports a 'logical and reasonable inference of the facts sought to be proved.'" *Id.* (quoting *Aten*, 130 Wn.2d at 656). "In addition to corroborating a defendant's incriminating statement, the independent evidence 'must be consistent with guilt and inconsistent with a hypothesis of innocence.'" *Id.* at 330 (quoting *State v. Lung*, 70 Wn.2d 365, 372, 423 P.2d 72 (1967)). "If the independent evidence supports 'reasonable and logical inferences of both criminal agency and noncriminal cause,' it is insufficient to corroborate a defendant's admission of guilt." *Id.* (quoting *Lung*, 70 Wn.2d at 372).

Felony communication with a minor for immoral purposes is governed by RCW 9.68A.090(2),[3] which provides,

> A person who communicates with a minor for immoral purposes is guilty of a class C felony . . . if the person communicates with a minor or with someone the person believes to be a minor for immoral purposes . . . through the sending of an electronic communication.

Division Three of our court described this crime as "communication, by words or conduct that is: (1) done for immoral purposes, (2) intended to reach a minor, and (3) received by a minor or someone the person believed to be a minor." *State v. Aljutily*, 149 Wn. App. 286, 296, 202 P.3d

---

[3] RCW 9.68A.090 was amended in 2013. The amendment does not affect the issues in this matter.

1004 (2009). An "immoral purpose" is sexual conduct that would be criminal if performed. *See State v. Luther*, 65 Wn. App. 424, 427, 830 P.2d 674 (1992).

Leonard does not dispute that he communicated with C.H., that those communications were for an immoral purpose, or that C.H. received those communications. Rather, he only argues that the corpus delicti is absent due to insufficient independent evidence that he intended his communication to reach a minor. *Aljutily*, 149 Wn. App. at 296.

Aside from Leonard's confession that he intended his immoral communications to reach a minor, the State presented the following independent evidence: (1) an e-mail exchange in which Leonard asks C.H. if he is "still serious about coming out [to Washington] after [he's] done with school," Report of Proceedings (RP) at 129, and C.H. responds that he must wait two years before he can meet Leonard, (2) a message from C.H. to Leonard saying that he had to be asleep by 1:00 a.m. for school, (3) an e-mail discussing that C.H. was going to "band camp," Ex. 16, at 14, (4) telephone calls between Leonard and C.H. and C.H.'s testimony that his voice was higher during those telephone conversations, and (5) C.H.'s testimony that he gave Leonard "clues . . . within the text messages [he] had sent" about his age. RP at 66.[4] This independent evidence proves the required corpus delicti; specifically, the element of the crime that Leonard intended his communication to reach a minor.

---

[4] In findings of fact 59 and 60, the trial court stated that C.H. had a "poor relationship with his step-father" and that "[t]he defendant knew [C.H.] did not get along with his step-father." Clerk's Papers at 13. We agree with Leonard that there was no evidence presented that C.H. had trouble with his stepfather or that Leonard knew about it. Accordingly, we do not rely on those findings or related evidence in determining whether there was sufficient independent evidence of the corpus delicti.

Leonard argues, however, that college students, who are not minors, refer to "school," may attend "band camp," and may refer to waiting two years before being able to see somebody. Br. of Appellant at 11. Framing the evidence in this way, Leonard argues the independent evidence of the corpus delicti is consistent with a hypothesis of innocence: that Leonard intended his communication not to be to a minor. We disagree.

Examining the State's evidence in the aggregate provides an inference that Leonard intended his communications to reach a minor. The fact that a college student might have said the same things about school, band camp and waiting two years is beside the point. The question, rather, is whether the evidence supports "'reasonable and logical inferences of both criminal agency and noncriminal cause.'" *Brockob*, 159 Wn.2d at 330 (quoting *Lung*, 70 Wn.2d at 372). Taking this evidence in the aggregate, it stretches the contours of rational thinking to infer from it that Leonard did not intend his communications to reach a minor. In fact, allowing any conceivable, remote possibility to disqualify corroborative evidence would transmute the requirement of corroboration into one of proof beyond a reasonable doubt, leaving little of the corpus delicti rule.

Leonard fails to show that there was insufficient evidence to prove the corpus delicti of the crime to which he confessed. Therefore, Leonard's counsel was not deficient in refraining from raising this issue at trial.

3.    Mental Evaluation

Next, Leonard argues that he was provided ineffective assistance of counsel because his attorney failed to have Leonard mentally evaluated and then relied on a mental deficiency defense. We disagree.

Leonard's argument almost entirely relies on *State v. Fedoruk*, 184 Wn. App. 866, 339 P.3d 233 (2014). In *Fedoruk*, there was ample evidence that the defendant had suffered documented mental illness and that he had made successful insanity defense claims to criminal charges in the past. *Id.* at 871-72, 885. Because his attorney failed to raise the issue of an insanity defense and did not seek an expert until the day before jury selection, the trial court denied Fedoruk a continuance. *Id*. at 876-77, 881-82. For these two reasons, among others, we held that defense counsel was ineffective. *Id.* at 881-85.

Here, the basis for the criminal charge came from Leonard's confession of his contact with C.H. However, during that same confession, Leonard also "admitted" to sexually inappropriate contact with two other minors. One was never found and the other, in reality, was a person greatly above the age of majority. Therefore, Leonard argues, evidence existed that he exhibited symptoms of possible mental delusion in regard to his admissions.

While it was possible that Leonard had a mental illness, this evidence alone does not make defense counsel's failure to investigate deficient. Nor does it necessarily fall below the threshold of a legitimate trial tactic in these circumstances to attempt to argue a mental component in his defense without bringing in an expert or medical evidence to support such a theory. Unlike *Fedoruk*, Leonard does not have a history of mental deficiency or using mental illness as a defense to prior criminal charges. No evidence suggests that he had ever been diagnosed with a serious mental illness; rather, there is simply circumstantial evidence that he may have a mental illness based on the apparently false admissions to sexual contact with two other minors. In other words, the record does not show any actual evidence of his mental illness

8

that would make defense counsel's failure to investigate fall below an objective standard of reasonableness. Accordingly, we hold that defense counsel's tactics were not deficient.

## II. KNOWING, INTELLIGENT, AND VOLUNTARY WAIVER OF *MIRANDA* RIGHTS

Leonard argues that the trial court erred in concluding that he made a knowing, intelligent, and voluntary waiver of his *Miranda* rights. We disagree.

For a defendant's statements obtained through custodial interrogation to be admissible, the State must establish by a preponderance of the evidence that the defendant was fully advised of his *Miranda* rights and knowingly and intelligently waived them. *State v. Heritage*, 152 Wn.2d 210, 214, 95 P.3d 345 (2004); *State v. Athan*, 160 Wn.2d 354, 380, 158 P.3d 27 (2007); *State v. Haack*, 88 Wn. App. 423, 435-36, 958 P.2d 1001 (1997). "We will not disturb a trial court's conclusion that a waiver was voluntarily made if the trial court found, by a preponderance of the evidence, that the statements were voluntary and substantial evidence in the record supports the finding." *Athan*, 160 Wn.2d at 380. "A confession is coerced, i.e., not voluntary, if based on the totality of the circumstances the defendant's will was overborne." *State v. Burkins*, 94 Wn. App. 677, 694, 973 P.2d 15 (1999). Some of the factors we consider within the totality of the circumstances include the defendant's physical condition, age, and mental abilities, as well as the police's conduct in obtaining the confession. *Id.*

Here, substantial evidence supports the trial court's findings that Leonard waived his *Miranda* rights and was not coerced before giving his incriminating statements. These findings, in turn, support the trial court's conclusion that he made a knowing, voluntary, and intelligent waiver of his rights. Officer Brent Murray first contacted Leonard and told him he was investigating a charge of communicating with a minor for immoral purposes. Murray read

Leonard his *Miranda* rights in their entirety. He told Leonard that if he wanted to exercise those rights at any time, he could. Leonard expressed no confusion about his rights and consented to speak with Murray. Murray and another officer then invited Leonard to the police station for an interview, to which he agreed.

Once at the police station, Murray asked Leonard if he remembered the rights he read him earlier and whether he wanted them to be read again. Leonard declined and replied that he understood his rights. During the recorded interview, Murray read to Leonard the entirety of his *Miranda* rights again. Leonard indicated that he understood those rights and that he understood the rights when read to him earlier. Murray asked Leonard whether he understood that he could invoke any of the *Miranda* rights at any time and that he did not have to answer any questions asked of him; Leonard responded that he understood. This is substantial evidence to support the trial court's findings that Leonard was not coerced and waived his *Miranda* rights.

Leonard argues, though, that he was coerced into making his incriminating statements because of his "suggestibility and desire to be cooperative with authority" and that he did not understand his rights because he was following his "typical practice of kowtowing to authority." Br. of Appellant at 18. However, the question on appeal is whether substantial evidence supports the trial court's findings that Leonard waived his rights and was not coerced; not whether there is evidence contrary to these findings. Accordingly, we hold that substantial evidence supports the trial court's findings, which in turn, support the conclusion that Leonard voluntarily, knowingly, and intelligently waived his *Miranda* rights.

IV. LFOs

Leonard argues that the trial court erroneously imposed $3,742.16 in LFOs, including a $250.00 jury demand fee. He raises this issue for the first time on appeal.

When an appellant fails to raise an issue below, this court may refuse to review it, subject to exceptions not applicable here. RAP 2.5(a). However, in this particular instance the jury demand fee of $250.00, as the State concedes, was clearly erroneous, since Leonard had a bench trial. RCW 36.18.016(3)(b).[5] Under these circumstances, we exercise our discretion to review and reverse the plainly erroneous jury demand fee.

Leonard also challenges the full assessment of $3,742.16 in LFOs, arguing that it was made without the individualized inquiry into ability to pay required by *Blazina*. However, in *State v. Lyle*, 188 Wn. App. 848, 852, 355 P.3d 327 (2015), we ruled that we would decline to exercise our discretion to consider such claims for the first time on appeal when sentencing took place between our decision in *Blazina*, 174 Wn. App. 906, 301 P.3d 492 (2013), *remanded*, 182 Wn.2d 827 (2015) and the Supreme Court's 2015 decision in the same case. Leonard's sentencing fell within this window.

Here, though, we are faced again with special circumstances in that we are remanding for correction of an erroneous LFO, the jury demand fee, apart from *Blazina*. In that posture, compliance with the rule announced by our Supreme Court is best served by ordering that all of Leonard's discretionary LFOs be stricken and remanding for the trial court to inquire into Leonard's ability to pay consistently with *Blazina* before imposing any discretionary LFOs.

---

[5] RCW 36.18.016 was amended in 2015. The amendment does not affect the issues in this matter.

No. 46753-4-II

CONCLUSION

We affirm Leonard's conviction, but reverse his jury demand fee and his discretionary LFOs. We remand for the sentencing court to strike his jury demand fee, any other discretionary LFOs, and to comply with *Blazina* before imposing any discretionary LFOs against Leonard. Under *Blazina* the sentencing court must make an individualized inquiry into the defendant's current and future ability to pay. 182 Wn.2d at 839. In making this inquiry, the court must consider factors including but not limited to incarceration and a defendant's other debts, including restitution. *Id*. Further, according to *Blazina*, if one meets the GR 34 standard for indigency, courts should seriously question that person's ability to pay LFOs. *Id*.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Bjorgen, A.C.J.

We concur:

Melnick, J.

Sutton, J.

12