OPINION
Defendant-appellant, Earl Taylor, (hereinafter "appellant"), appeals from his conviction in the Cuyahoga County Court of Common Pleas of a single count of felonious assault in "Violation of R.C. 2903.11. The appellant voluntarily waived a jury prior to trial and, thus, the guilty verdict was returned subsequent to a bench trial.
The facts underlying the indictment are somewhat less conventional than most domestic violence cases. The appellant and the victim met at a tavern in Lakewood shortly before the alleged incident took place sometime during the first week of December, 1997. Prior to this encounter at the tavern, the appellant and the victim were totally unfamiliar with each other. The appellant, a thirty-three-year-old male, struck up a conversation with the victim, a forty-six-year-old female, and proceeded to buy her a number of drinks. At some point, the parties decided to leave the bar and walk back to the appellant's apartment on Edgewater Drive, which was less than a five minute walk from the bar.
The testimony of the appellant and the victim varies substantially as to the sequence of events once they returned to the appellant's apartment. The victim, by her own admission, remembers very little of that evening other than that she was shocked and appalled when the appellant began engaging in lewd acts shortly after they had arrived at his apartment. The appellant claims that the couple engaged in consensual sex until well into the morning[1] and that the lewd acts alleged by the victim never happened.
At 6:00 P.M. the following evening, the appellant awoke from his slumber and found the victim sitting at a table, reading a book, and having a drink. Soon after that, the couple decided that they should once again head back up to the same tavern that they had been at the previous evening. After drinking for several more hours, the appellant and the victim headed to a nearby grocery store to purchase some provisions and then went back to the appellant's apartment. Neither the appellant nor the victim testified that they engaged in any sort of sexual relations that evening. In fact, it is not at all clear from the record what they were doing during these evening/early morning hours. The appellant stated at trial that he was still awake at 5:00 A.M., watching television while he laid on the couch, when he heard a loud noise:
 Yeah. At 5:00 o'clock in the morning I remember — its like I'm laying down, I have a couch and a love seat and they are set like on an angle like this. She was laying on the love seat and I was laying on the couch, so my back was kind of to her. I'm watching TV. Next thing I know she falls. I hear this like thumping you know. Its like — and she's stuck in between the couch, the love seat and this big coffee table I have and she was convulsing.
 And I thought maybe she was playing some kind of trick or something, you know, because I mean one second we're laughing the next second she's convulsing. Then I notice its like when I went to pick her up, you know, that I stepped in urine. She urinated all over this big area rug I have. Then right there — then I'm like, Oh, God, man. Its like — I called 911.
The appellant did, in fact, call 911 and a crew of emergency medical technicians, accompanied by a Lakewood police officer, responded to the appellant's apartment. The victim at this time, although obviously disoriented, refused transport to the hospital. The responding personnel testified that they did not notice any significant bruising or abrasions on the victim's face.
The appellant testified that after the EMS crews left, he advised the victim that she could sleep in his bed and that he would sleep on the couch. At 12:22 P.M. the appellant made another 911 call in which he reported that the victim was once again experiencing severe seizures. The appellant testified that he became aware of the victim's condition when he was awoken by a loud "bang" which came from his bedroom. The appellant stated that when he made his way to the bedroom, he discovered that the victim had fallen into a bookcase and that her nose was still "caught up in the corner of that cabinet[2] and she was convulsing." The appellant claims that the victim lost control of all bodily functions after the onset of the seizure, which resulted in her excreting waste all over the entire room.[3]
When the emergency medical technicians arrived, they surmised that the victim had experienced severe trauma to the facial region, including a broken noise, severe bruising of both eyes, as well as numerous other bruises and abrasions. As was the case when the they had been summoned earlier that morning, the medical technicians were once again accompanied by a uniformed Lakewood police officer. This officer testified to the same observations as to the condition of the scene, as did the medical personnel. The officer admitted that he did not check the appellant's fist for any telltale signs that he had beaten the victim, as is customary in this sort of case.
After arriving at Lakewood Hospital, the victim was treated by Dr. Arthur Dick, a neurologist. Dr. Dick testified that the victim's seizures did not appear consistent with injuries normally incurred by a person who falls during a seizure and that he did not believe that the injuries could have been incurred as a result of falling on a flat surface, such as a shelf or a table:
 [A] person weighs 100, 130 pounds and falls on a table like that you expect to see skin abrasions, bruises. You don't expect to see this kind of blunt injury pattern. * * *
 You would see a single wound you wouldn't see these multiple bruised wounds. * * *
 I can see if she were having a seizure on her face for instance, you know, you asked earlier why isn't this just an ordinary seizure you would have abrasions on your nose. You get abrasions on the high spots. If you — imagine your face being repeatedly bounced across a floor like this. If you're seizing, if you — if you're face down you hit the nose, the zygoma, the shoulder, skin — chin. You hit all the high spots not the low spots. And you get elbows, you get knees sometimes, you get shoulders. If you're bruised you get hit in the back of the head.
The victim initially denied that she was the victim of abuse, and told hospital staff that she had caused her own injuries — although she was very vague as to the details. The victim remained hospitalized for approximately two days, after which she checked herself out against the advice of her physicians.
On the same day the victim left the hospital, she went to the Lakewood Police Department to report an assault. The victim gave the investigating officer a piece of paper that the appellant had given her with his name and phone number on it. A number of pictures, which were introduced into evidence at trial, were taken of the victim at the police station. These pictures clearly show numerous and severe facial injuries. The victim's right eye area is so badly swollen in the photographs that it is nearly completely shut.
The investigating officers called the appellant at the phone number that the appellant had given the victim. The appellant agreed to come in the next day, but did not appear. During the next ten days, the police were unable to contact the appellant, although he did leave a pager number. The officers eventually learned that the appellant was living at an address on W. 130th Street in Cleveland and arrested him there ten days after the initial contact had been made. The appellant provided the officers with a voluntary written statement wherein he denied ever hitting the victim or in any way causing her injuries.
On March 11, 1998, the appellant was indicted on one count of felonious assault. A non-jury trial commenced on August 10, 1998. On August 12, 1998, the trial judge announced the guilty verdict. On September 10, 1998, the trial court imposed a sentence of two years incarceration, the minimum permitted by the sentencing statute. The appellant timely filed a Notice of Appeal with this court from the verdict of the trial court.
The appellant submits two assignments of error for this court's review. These two assignments of error will be addressed concurrently as they have a common basis in law and fact:
 I. THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION FOR ACQUITTAL PURSUANT TO RULE 29 (A), — OHIO RULES OF CRIMINAL PROCEDURE, AS THERE WAS INSUFFICIENT EVIDENCE TO PROVE EACH AND EVERY ELEMENT OF THE OFFENSES CHARGED BEYOND A REASONABLE DOUBT.
 II. THE APPELLANT'S CONVICTION AND SENTENCE ARE CONSTITUTIONALLY INFIRM AS THE PROSECUTION FAILED TO PROVE EACH AND EVERY ELEMENT OF THE OFFENSE CHARGED BEYOND A REASONABLE DOUBT.
In State v. Jenks (1991), 61 Ohio St.3d 259, the Ohio Supreme Court re-examined the standard of review to be applied by an appellate court when reviewing a claim of insufficient evidence.
 An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. (Jackson v. Virginia [1979], 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, followed.
State v. Jenks, supra, paragraph two of the syllabus.
Where there is substantial evidence upon which the trier of fact has based its verdict, a reviewing court abuses its discretion in substituting its judgment for that of the jury as to the weight and sufficiency of the evidence. State v. Nicely
(1988), 39 Ohio St.3d 147. The weight to be given the evidence and the credibility of the witnesses are primarily for the trier of fact to determine. State v. DeHass (1967), 10 Ohio St.2d 230.
R.C. 2903.11, Felonious Assault, states in relevant part that "[n]o person shall knowingly cause serious physical harm to another or to another's unborn."
In the instant case, even the state concedes that the memory of the victim is, at best, sketchy. The victim testified at trial that she remembers virtually nothing from the time that she first returned with the appellant to his apartment until the time that the emergency medical workers arrived at the apartment for a second time to transport her to the hospital, other than getting punched by the appellant. The relevant time frame that we are dealing with in assessing the length of the victim's near total lack of memory, is approximately 33-35 hours. The one event that the victim could recall, being punched in the face, must have occurred sometime between 7:00 A.M. and approximately 12:00 P.M. on the morning of the December 2, 1997, during the interval between the initial visit by emergency technicians, when no visible injuries were noted to the victim's face, and the second visit, when the victim presented with severe and unmistakable facial trauma. We know from the appellant's own testimony that the victim was in the appellant's apartment during this entire interval and that no other persons were in the apartment during this period.
The trial court was able to evaluate the credibility of the victim and, apparently, believed her testimony as to having a distinct memory of being punched by the appellant. The trial court's conclusion that the victim was more credible than the appellant was also supported by the expert medical testimony heard at trial. The appellant offered nothing more than conjecture in support of his theory that the victim's massive injuries were caused by the onset of a seizure.
There was uncontroverted expert testimony presented at trial that the injuries sustained by the victim were not consistent with falling against a flat surface during a seizure or even with repeatedly falling against such a surface. The finder of fact apparently did not find credible the appellant's explanation that the victim fell against a bookcase in such a manner that she caught her nose on a corner and then was caused to repeatedly smash her face against the surface by her continuing seizure.
Dr. Dick testified at trial that the seizure(s) experienced by the victim could have actually been caused by a severe beating. Additionally, Dr. Dick testified that such a prolonged and serious battering could have been the impetus that caused the victim to be unable to recall many of the events that occurred during the relevant time period.
In addition to assessing the pictures of the victim taken by the Lakewood Police Department, the trial court also examined the flat surface against which the appellant claims the victim fell and injured herself.
The Ohio Supreme Court has acknowledged that circumstantial evidence may, in some instances, be more "certain, satisfying and persuasive than direct evidence." State v. Jackson (1991),57 Ohio St.3d 29, 38. Thus, it was not error if proof of, the appellant's guilt were based upon circumstantial as well as direct evidence. State v. Franklin (1991), 62 Ohio St.3d 118,124; State v. Jenks (1991), 61 Ohio St.3d 259, 272; State v.Nicely (1988), 39 Ohio St.3d 147.
Given the quantum of evidence presented at trial tending to indicate that the appellant caused the victim's injuries by violently and repeatedly striking her about the face with his closed fists, this court cannot say as a matter of law that no rational trier of fact could have found that there was sufficient evidence as to all essential elements of felonious assault to support a finding of guilt.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
DYKE, P.J. and KARPINSKI, J., CONCUR.
 _______________________________ MICHAEL J. CORRIGAN JUDGE
[1] The victim was unable to remember during her testimony at trial whether she and the appellant had, in fact, engaged in voluntary sexual relations. The victim also admitted that she had no explanation for this complete and prolonged loss of memory.
[2] The piece of furniture in question was purportedly a "combination bookcase/cabinet."
[3] The emergency room report, which was prepared subsequent to the victim being transported to Lakewood Hospital, confirms that she was incontinent for stool and urine at the time she was found.