[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] JUDGMENT ENTRY.
This appeal, considered on the accelerated calendar under App.R. 11.1(E) and Loc.R. 12, is not controlling authority except as provided in S.Ct.R.Rep.Op. 2(G)(1).
Following a trial where the jury was instructed to consider the elements of complicity to commit an offense, appellant Terrence Gholston was convicted of two counts of aggravated robbery and one of the two accompanying specifications.
On appeal, Gholston's sole assignment of error asserts that his conviction was against the weight of the evidence. He argues in support of his assignment that the state failed to prove the corpus delicti of aggravated robbery, because the victims did not testify and because two of the state's witnesses were not credible as a result of the inconsistencies in their testimony and their statements to the police.
Gholston, Anthony Calvin, Michael Jackson, and Michael Jones were indicted, following the aggravated robbery of two drug dealers, Kevin and Ernest Cephas. Minutes after the robbery, the victims had stopped a police car and reported the offense to Cincinnati Police Lieutenant David Bailey. They described the assailants and the van they had been driving. The officer could see the van's taillights when he began his pursuit. Having been told by the victims that the men had guns, he called for backup assistance. The officer stopped the van minutes later. Inside the van were a pistol, gloves, ski hats, a gold chain, and a cell phone with the name of one of the victims.
Calvin and Jones gave signed statements to the police and also testified at trial. Both Calvin and Jones pleaded guilty to a charge of robbery with a one-year gun specification. And both were offered three-year sentences for their testimony. The men explained that their trial testimony and their earlier statements were inconsistent because the police had told them to lie.
In his statement, Calvin related that Jackson had hit one of the victims with a pistol, that Gholston had taken money from the victim, and that they were buying crack cocaine. Calvin said that Gholston was counting the money and that Jackson threw the cocaine out the window and the gun to the back of the van before Lieutenant Bailey stopped the van.
In contrast, Calvin testified at trial that Gholston and Jones had left the van to purchase marijuana from the two drug dealers. Calvin testified that Gholston had started scuffling with the Cephases during the transaction, and that he had seen Gholston push one of the Cephases, get on top of him, and take "his stuff, his weed." At some point, Jackson also left the van. According to Calvin, when Gholston returned to the van, he had money or some marijuana in his hands. When the men spotted the police car, a pistol was thrown from the front of the van, where Jackson and Gholston were seated, to the back. According to Calvin, Jackson was driving and putting on his seat belt when the pistol was tossed. He testified that, after the stop, he had overheard Gholston tell Jones that he had to take the "gun case" because his record was too bad.
Jones gave the police two statements. In his first statement, he said that (1) the men had left Gholston's home that evening with the intent to rob some drug dealers; (2) he, Calvin, and Gholston had robbed some "guys;" (3) Gholston had taken money from the victims; (4) he had received a cell phone that had been taken from one of the victim's pockets; (5) they had worn ski masks (which, along with gloves, had been found in the van); and (6) Calvin had held the gun. In his second statement, he said that the first statement was true except that he had not left Gholston's house with the intent to commit a robbery. He also said in the second statement that the gun was not his and that Gholston had told him that he was going to "have to take the gun" because Gholston had a bad record.
In contrast, Jones's testimony at trial was that Gholston had gotten into a scuffle with one of the drug dealers and had hit him with his fist. He saw Gholston go near or inside the victim's pocket but did not see Gholston take anything. Jones also denied that he had seen a gun during the scuffle, or that he had seen anything taken from the victims. Jones testified that he had removed the cell phone from the ground after the scuffle. According to Jones, he knew that Gholston had a gun, but did not see it until it was tossed from the front of the van to the back. At the time it was tossed, Jackson was driving the van with both hands on the steering wheel.
Three police officers testified. Lieutenant Bailey described his pursuit and stop of the van. To his knowledge, no money, cell phone, or gun was recovered from Gholston, and Gholston's prints were not on the gun. Cincinnati Police Officer John Neal arrived at the scene in response to Lieutenant Bailey's backup call and saw in the van a pistol lying under the seat, a cell phone with the name "K. Cephas" on it, and a gold chain.
Cincinnati Police Officer Kurt Ballman testified that the victims had called the police and had made a report. At his request, they came to the district office to identify the assailants. He observed facial injuries on both. The Cephases reported that a cell phone, a gold pendant and $600 had been stolen. They claimed the recovered cell phone and gold pendant. No money, however, had been recovered. Officer Ballman testified that none of the property had been recovered from Gholston. He also testified that he test-fired the pistol, and the bullet was admitted as an exhibit.
Officer Ballman testified that Jones had contacted him regarding his second statement. Officer Ballman read him his Miranda rights and had him sign the waiver before Jones gave him his second statement. According to Officer Ballman, Jones wanted to make the second statement to clarify that he did not have the gun and that he did not have the intent to commit robbery when he left Gholston's house.
Officer Ballman denied that he had told Jones what to write in the statement or that he had coerced the statement. Officer Ballman testified that he had informed Jones that Gholston was saying that Jones and Calvin had committed the robbery, and that Gholston and Jackson had not been involved. According to Officer Ballman, Jones never told him that he had obtained the cell phone by picking it off the ground. Officer Ballman also had obtained a statement from Calvin. He denied that he had told Calvin to lie or that he had provided Calvin any facts to include in his statement.
In a review of a weight-of-the-evidence claim, this court must review the entire record and all reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the jury clearly lost its way and created a manifest miscarriage of justice, requiring a reversal and a new trial.[1]
Ghoston argues that the state failed to establish the corpus delicti of aggravated robbery because of the lack of credible evidence. In State v.Edwards,[2] the Ohio Supreme Court defined the corpus delicti of a crime as "the body or substance of the crime, included in which are usually two elements: (1) the act and (2) the criminal agency of the act."
According to Gohlston, the only way to establish aggravated robbery is by the testimony of the victims. This is untrue. Proof of the corpusdelicti can be by circumstantial or direct evidence.[3] Obviously, if only a victim's testimony was sufficient to establish a crime, there could be no prosecution for murder. The jury in this case had before it both the testimony and the statements of Calvin and Jones, as well as the testimony of the police officers. Depending on what the jury chose to believe, there was evidence that Gholston had attacked the victims, that property had been stolen, and that a gun had been used in the theft.
It is clear in this case that there were not only conflicts in the testimony of the witnesses, but also conflicts between extrajudicial statements of witnesses and their trial testimony. The jury, however, was free to "believe or disbelieve any witness or accept part of what a witness sa[id] and reject the rest."[4] Based on the record before us, we cannot conclude that the jury clearly lost its way in resolving the conflicts. Thus, we overrule Gholton's assignment.
Therefore, we affirm the trial court's judgment.
Further, a certified copy of this Judgment Entry shall constitute the mandate, which shall be sent to the trial court under App.R. 27. Costs shall be taxed under App.R. 24.
Gorman, P.J., Painter and Shannon, JJ.
Raymond E. Shannon, retired, of the First Appellate District, sitting by assignment.
[1] See State v. Martin (1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717,720-721.
[2] See State v. Edwards (1976), 49 Ohio St.2d 31, 358 N.E.2d 1051, paragraph one of the syllabus, vacated in part Edwards v. Ohio (1978),438 U.S. 911, 98 S.Ct. 3147.
[3] Accord State v. Nicely (1988), 39 Ohio St.3d 147, 154-155,529 N.E.2d 1236, 1239-1240; State v. Jenks (1991), 61 Ohio St.3d 259,574 N.E.2d 492, paragraph one of the syllabus.
[4] See State v. Antill (1964), 176 Ohio St. 61, 66, 197 N.E.2d 548,553.