JOURNAL ENTRY AND OPINION
{¶ 1} The appellant, Muhamed Farah, appeals his conviction for misdemeanor theft arising from a bench trial held in the Court of Common Pleas, Criminal Division. Upon our review of the arguments of the parties and the record presented, we affirm the judgment of the trial court for the reasons set forth below.
 {¶ 2} On the evening of November 19, 2000, Farah attended a fundraiser gambling event benefitting the Hillhoppers, a nonprofit girls' basketball organization. The event was managed by the victim, James Farris. Farah had attended numerous fundraiser gambling events and was on a first-name basis with Farris.
 {¶ 3} At the November 19 event, Farah lost a great deal of money playing the poker card game, "Texas Hold'em." Farah then asked Farris for a $1,000 advance in gaming chips in exchange for a blank check, number 1093. Farris bought the gaming chips for Farah, and Farah continued playing poker.
 {¶ 4} The following testimony is in dispute. Farah claims that he was unable to find Farris at the end of the night, so he returned $720 worth of gaming chips to the money cage. Farah further claims that he left the fundraiser event without filling in any of the entries on the blank check he had given Farris. Farris claims that he did not see Farah at the end of the night, and Farah did not return any gaming chips to the money cage. Farris further claims that Farah did fill out the blank check except for the "pay to the order" line. A handwriting analysis and comparison done by the Cleveland Police Department could not identify Farah as having written the entries on the front of check number 1093.
 {¶ 5} Within the next few days, Farah collected all the debts owed to his business on a reduced basis and moved to Florida. When Farris went to cash the $1,000 check, Keybank informed him that the account was empty. Testimony from Detective Malloy indicated that Farah's account was in fact closed on August 10, 2000. (Tr. at 76.)
 {¶ 6} Farah was arrested in Florida almost two years later and extradited back to Cleveland. He was charged with passing a bad check and theft of an amount at least $500 but less than $5000.
 {¶ 7} On November 21, 2002, a bench trial convened. At trial, Farah admitted he owed Farris at least $280, but had made no attempt to contact him or repay the money. (Tr. at 120-121.) Farah was found not guilty of passing a bad check, but guilty of felony theft. The trial court ordered a presentence investigation.
 {¶ 8} On January 9, 2003, a sentencing hearing was held at which the trial court modified its verdict and reduced Farah's conviction from a fifth degree felony theft to a first degree misdemeanor theft as a result of the discrepancy regarding the amount Farah stole from Farris and because of the fact that the Cleveland Police Department could not positively match Farah's handwriting to the writing on check number 1093. The trial court sentenced Farah to one year probation and ordered him to pay restitution to Farris in the amount of $1000. Farah brings this timely appeal asserting one assignment of error.
 {¶ 9} "The verdict of the trial court finding the defendant-appellant guilty of a misdemeanor theft offense was supported by insufficient evidence and/or was against the manifest weight of the evidence."
SUFFICIENCY OF EVIDENCE
 {¶ 10} In State v. Jenks (1991), 61 Ohio St.3d 259, the Ohio Supreme Court re-examined the standard of review to be applied by an appellate court when reviewing a claim of insufficient evidence:
 {¶ 11} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. (Jackson v. Virginia [1979],443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, followed.)" Id. at paragraph two of the syllabus.
 {¶ 12} More recently, in State v. Thompkins (1997),78 Ohio St.3d 380, the Ohio Supreme Court stated the following with regard to the "sufficiency" as opposed to the "manifest weight" of the evidence:
 {¶ 13} "`Sufficiency' is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law." Black's Law Dictionary (6 Ed. 1990) 1433. See, also, Crim.R. 29(A) (motion for judgment of acquittal can be granted by the trial court if the evidence is insufficient to sustain the conviction). In essence, sufficiency is a test of adequacy. Whether the evidence is legally sufficient to sustain a verdict is a question of law. State v.Robinson (1955), 162 Ohio St. 486, 55 O.O. 388, 124 N.E.2d 148. In addition, a conviction based on legally insufficient evidence constitutes a denial of due process. Tibbs v. Florida (1982), 457 U.S. 31, 45,102 S.Ct. 2211, 2220, 72 L.Ed.2d 652, 663, citing Jackson v. Virginia
(1979), 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560." Id. at 386-387.
 {¶ 14} Finally, we note that a judgment will not be reversed upon insufficient or conflicting evidence if it is supported by competent credible evidence which goes to all the essential elements of the case.Cohen v. Lamko (1984), 10 Ohio St.3d 167.
 {¶ 15} Where there is substantial evidence upon which the trier of fact has based its verdict, a reviewing court abuses its discretion in substituting its judgment for that of the jury as to the weight andsufficiency of the evidence. State v. Nicely (1988), 39 Ohio St.3d 147. The weight to be given the evidence and the credibility of the witnesses are primarily for the trier of fact to determine. State v. DeHass
(1967), 10 Ohio St.2d 230.
 {¶ 16} In the instant matter, the appellant was convicted of violating R.C. 2913.02, theft, which states:
 {¶ 17} "(A) No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways:
 {¶ 18} "(1) Without the consent of the owner or person authorized to give consent;
 {¶ 19} "(2) Beyond the scope of the express or implied consent of the owner or person authorized to give consent;
 {¶ 20} "(3) By deception;
 {¶ 21} "(4) By threat;
 {¶ 22} "(5) By intimidation.
 {¶ 23} "(B)(1) Whoever violates this section is guilty of theft."
 {¶ 24} The appellant claims the evidence presented at trial does not support his conviction for theft beyond a reasonable doubt because he was found not guilty of passing a bad check; therefore, as a matter of law, the element of deception needed for a conviction of misdemeanor theft was lacking. We find appellant's argument without merit.
 {¶ 25} The appellant's own admissions during trial, in addition to the evidence presented by Detective Malloy concerning the status of the appellant's bank account, constitutes sufficient evidence supporting the essential elements of the crime.
 {¶ 26} At trial, the appellant admitted to owing the victim at least $280 after he left the fundraising event on November 19, 2000. The appellant admitted still owing the victim at least $280 when he was arrested in Florida two years later. During those two years, appellant had no contact with the victim, even though the victim tried contacting the appellant several times. Lastly, during cross-examination, the appellant admitted to leaving the victim with a worthless check in exchange for $1000 worth of gaming chips. (Tr. at 124.)
 {¶ 27} The testimony of Detective Malloy concerning the status of the appellant's bank account before November 19, 2000, proves the appellant acted with deception. The Detective presented evidence showing that the appellant's bank account was closed on August 10, 2000. Although he knew that his check was worthless, the appellant still gave the check to the victim in exchange for $1000 worth of gaming chips. The act of giving a worthless check as collateral, whether it was blank or had the entries filled out, constitutes deception.
 {¶ 28} Furthermore, a review of the record indicates the trial court found the appellant not guilty of passing a bad check because the handwriting on the check could not be conclusively matched with the handwriting of the appellant. However, the trial court could find the appellant guilty of theft and not guilty of passing a bad check because the act of giving a check from a closed bank account as collateral for gaming chips would constitute the element of deception needed for a conviction.
 {¶ 29} To conclude, we find the appellant's conviction for misdemeanor theft, in violation of R.C. 2913.02, is supported by the sufficiency of the evidence. When viewed in the light most favorable to the prosecution, the State's evidence could convince a reasonable trier of fact beyond a reasonable doubt that the appellant unlawfully intended to deprive the victim of money and obtained control of the victim's money through the means of deception.
 {¶ 30} Since the evidence is sufficient to support the appellant's conviction for theft, we will next address whether the appellant's conviction is against the manifest weight of the evidence.
 MANIFEST WEIGHT {¶ 31} Article IV, Section 3(B)(3) of the Ohio Constitution authorizes appellate courts to assess the weight of the evidence independently of the fact-finder. Thus, when a claim is assigned concerning the manifest weight of the evidence, an appellate court "has the authority and the duty to weigh the evidence and determine whether the findings of * * * the trier of fact were so against the weight of the evidence as to require a reversal and a remanding of the case for retrial." State ex rel. Squire v. Cleveland (1948), 150 Ohio St. 303,345.
 {¶ 32} The standard employed when reviewing a claim based upon the weight of the evidence is not the same standard to be used when considering a claim based upon the sufficiency of the evidence. The United States Supreme Court recognized these distinctions in Tibbs v.Florida (1982), 457 U.S. 31, where the court held that, unlike a reversal based upon the insufficiency of the evidence, an appellate court's disagreement with the jurors' weighing of the evidence does not require special deference accorded verdicts of acquittal, i.e., invocation of the double jeopardy clause as a bar to relitigation. Id. at 43.
 {¶ 33} Upon application of the standards enunciated in Tibbs, the court in State v. Martin (1983), 20 Ohio App.3d 172, has set forth the proper test to be utilized when addressing the issue of manifest weight of the evidence. The Martin court stated:
 {¶ 34} "There being sufficient evidence to support the conviction as a matter of law, we next consider the claim that the judgment was against the manifest weight of the evidence. Here, the test is much broader. The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of the witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.
 {¶ 35} "Moreover, it is important to note that the weight of the evidence and the credibility of the witnesses are issues primarily for the trier of fact. State v. DeHass (1967), 10 Ohio St.2d 230. Hence we must accord due deference to those determinations made by the trier of fact."
 {¶ 36} Appellant claims the elements constituting the crime of theft, especially the element of deception, were never proven beyond a reasonable doubt by the prosecution.
 {¶ 37} According to R.C. 2913.02, the prosecution must prove beyond a reasonable doubt that the appellant: (1) acted with the purpose to deprive the owner of property; (2) knowingly obtained or exerted control over the property; and (3) used deception.
 {¶ 38} As discussed previously, the appellant admitted during trial to owing the victim at least $280 after a night of gambling on November 19. The appellant admits receiving $1,000 worth of gaming chips in return for giving the victim a worthless blank check from a closed bank account as collateral. The appellant later left the fundraiser event without paying the victim the money he borrowed, and, within the next few days, he moved to Florida. The act of giving a worthless check as collateral for gaming chips constitutes the element of deception.
 {¶ 39} We find upon our review of the record that the trial court clearly did not lose its way so as to create a manifest miscarriage of justice. There were admissions made by the appellant during trial, along with the testimony of Detective Malloy, which support the appellant's conviction for misdemeanor theft; therefore, we find that appellant's conviction for misdemeanor theft was not against the manifest weight of the evidence.
Judgment affirmed.
Patricia A. Blackmon, P.J., and Ann Dyke, J., Concur.