JOURNAL ENTRY and OPINION
{¶ 1} Defendant-appellant, Robert Harris ("Harris"), appeals his conviction. Finding no merit to the appeal, we affirm.
 {¶ 2} In June 2003, Harris was charged with aggravated robbery containing one — and three-year firearm specifications.[1] The matter proceeded to a jury trial, where the following evidence was presented.
 {¶ 3} On June 6, 2003, at approximately 7:00 a.m., fifteen-year-old Max Hayes High School student "J.D." was waiting for the school bus at East 105th Street and Union Avenue in Cleveland. A teenage male, later identified as Robert Harris, approached him, asking for change for a five-dollar bill. J.D. recognized Harris as someone he had seen before at a local store and described him as wearing dark blue jeans and an "Ecko" brand charcoal gray hooded sweatshirt with black leather and white trim. J.D. told Harris that he only had a five-dollar bill and two singles. Harris was willing to take the two singles in exchange for his own five-dollar bill. The two boys began to walk toward East 106th Street, where Harris was to meet a friend to get the five dollars to exchange. As they were walking, J.D. reached into his back pocket to retrieve his wallet. Harris slapped the wallet out of J.D.'s hand, the wallet fell to the ground, and Harris and J.D. began to wrestle. Harris grabbed the wallet and then pulled a chrome semi-automatic gun out of his pants pocket. He pointed the gun at J.D.'s chest and told him to walk back to the bus stop. J.D. ran to the bus stop and called 911 on his cell phone. Police responded, but Harris had already left the scene.
 {¶ 4} On June 17, 2003, J.D. was riding his bicycle to a store with his brother. J.D. saw a young male with a gray hooded sweatshirt and dark jeans standing on the corner. J.D. first recognized the clothes as being similar to those the robber wore, but did not recognize the boy because his face was turned away. When the boy turned around, J.D. recognized him as the robber. J.D. sent his brother to get their mother while J.D. waited across the street from Harris. When J.D.'s mother and stepfather arrived, J.D. confirmed that Harris was the person who had robbed him. J.D.'s stepfather approached Harris, spoke with him, and held him until police arrived. J.D. then identified Harris to police as the person who had robbed him at gunpoint eleven days earlier.
 {¶ 5} The jury found Harris guilty of aggravated robbery with one — and three-year firearm specifications. Harris was sentenced to six years' incarceration. He appeals, raising two assignments of error, which will be addressed together.
 Sufficiency and Manifest Weight of the Evidence {¶ 6} In his first assignment of error, Harris argues the trial court erred in overruling his motion for acquittal because his conviction was not supported by sufficient evidence. In his second assignment of error, Harris argues that his conviction was against the manifest weight of the evidence. Although these arguments involve different standards of review, we consider them together because we find the evidence in the record applies equally to both.
 {¶ 7} A challenge to the sufficiency of the evidence supporting a conviction requires a court to determine whether the State has met its burden of production at trial. State v. Thompkins, 78 Ohio St.3d 380, 390,1997-Ohio-52, 678 N.E.2d 541. On review for sufficiency, courts are to assess not whether the State's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction. Id. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Jenks (1991), 61 Ohio St.3d 259,574 N.E.2d 492, paragraph two of the syllabus.
 {¶ 8} In evaluating a challenge to the verdict based on manifest weight of the evidence, a court sits as the thirteenth juror, and intrudes its judgment into proceedings that it finds to be fatally flawed through misrepresentation or misapplication of the evidence by a jury that has "lost its way." Thompkins, supra at 387. As the Ohio Supreme Court declared:
"Weight of the evidence concerns `the inclination of the greater amount of credible evidence offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief.' * * *
The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Id.
 {¶ 9} We recently stated in State v. Bruno, Cuyahoga App. No. 84883,2005-Ohio-1862, that the court must be mindful that the weight of the evidence and the credibility of witnesses are matters primarily for the trier of fact. A reviewing court will not reverse a verdict where the trier of fact could reasonably conclude from substantial evidence that the prosecution proved the offense beyond a reasonable doubt. State v.DeHass (1967), 10 Ohio St.2d 230, 227 N.E.2d 212, paragraph one of the syllabus; State v. Eley (1978), 56 Ohio St.2d 169. Moreover, in reviewing a claim that a conviction is against the manifest weight of the evidence, the conviction cannot be reversed unless it is obvious that the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. State v. Garrow (1995), 103 Ohio App.3d 368, 370-371,659 N.E.2d 814. This is a difficult standard to meet, and we are not persuaded it was met in the instant case.
 {¶ 10} Harris was charged with aggravated robbery pursuant to R.C. 2911.01(A)(1), which provides that:
"(A) No person in attempting or committing a theft offense, as defined in section 2913.01 of the Revised Code, or in fleeing immediately after the attempt or offense shall do any of the following:
(1) Have a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it; * * *."
 {¶ 11} J.D. testified that Harris grabbed J.D.'s wallet and then pulled out a "chrome" semi-automatic gun and pointed it at J.D., telling him to walk back to the bus stop. J.D. testified that he had an unobstructed view of Harris' face. He had seen Harris before June 6 and recognized him during the robbery. He saw Harris eleven days after the robbery and recognized him again. J.D. was able to identify him to family members, the police, and to the judge and jury in court. He testified that his assailant was taller than him and he told police that Harris was about 5'5" and 125 pounds. J.D. was unable to explain why his written statement to police indicated that his assailant was 5'3" and 125 pounds, but admitted that he was "guessing" Harris' height and weight. J.D. was unable to remember the date that Harris was arrested and had difficulty in court establishing how long Harris was pointing the gun at him.
 {¶ 12} Harris also argues that the identification is invalid because J.D. recognized Harris on June 17 initially by the clothes he was wearing. A review of the record shows this recognition was not the result of Harris wearing similar clothes as on the day he robbed J.D., but because J.D. recognized his face. Cleveland Police Officer Joseph Yelko testified that he was one of the responding officers on June 17 when J.D. positively identified Harris as the person who had robbed him.
 {¶ 13} Harris argues that the trial court improperly relied on J.D.'s testimony to establish that Harris was the person who committed the aggravated robbery. The testimony of a victim is not circumstantial evidence or inference but direct evidence. State v. Williams (Nov. 29, 1990), Cuyahoga App. No. 57464, citing, State v. Nicely (1988),39 Ohio St.3d 147. In Nicely, the court stated that proof of guilt may be made by circumstantial evidence, real evidence, and direct or testimonial evidence, or any combination of the three, and all three have equal probative value. Id.
 {¶ 14} There is nothing fundamentally incredible about this young victim's testimony nor anything unusual about the fact that J.D. was unable to give the appropriate height or weight of his assailant. J.D. was a juvenile victim testifying in court fifteen months after the crime occurred, and he admitted that he was "guessing" his assailant's size.
 {¶ 15} J.D. may have been unsure about Harris' size or how long he held him at gunpoint; however, credibility rests primarily with the trier of fact. The jury has the opportunity to weigh all the evidence, including any inconsistencies in testimony, before rendering a verdict. The jury found J.D. to be credible and we will not usurp its role by second-guessing its conclusion. Based on the testimony, we cannot say that the jury lost its way in convicting Harris.
 {¶ 16} Therefore, viewing the evidence in the light most favorable to the prosecution, we find that there was sufficient evidence to support Harris' conviction. We also find that his conviction was not against the manifest weight of the evidence.
 {¶ 17} Accordingly, the first and second assignments of error are overruled.
Judgment affirmed.
It is ordered that appellee recover of appellant the costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Sweeney, P.J. and Rocco, J. CONCUR
[1] This case was initially brought before the juvenile court because Harris was a juvenile. He was subsequently bound over to the common pleas court.