JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant, Allen Randall ("appellant"), appeals from his convictions for felonious assault. For the reasons set forth below, we affirm.
 {¶ 2} On October 24, 2005, the Cuyahoga County Grand Jury indicted appellant on six counts. Counts one through five charged him with felonious assault against each of the five alleged victims, Umar Clark, Rasheed Mathis, Tatiana Franklin, Angela Sims and Devin Sims, in violation of R.C. 2903.11. Each count carried with it one-year and three-year firearm specifications in violation of R.C. 2941.141 and2941.145. Count six charged aggravated menacing in violation of R.C.2903.21. The Grand Jury also returned a nine-count indictment against co-defendant, Daniel Johns ("Johns"). Appellant and Johns pled not guilty to all charges.
 {¶ 3} On September 12, 2006, a trial of this matter began. Three days later, the trial court granted appellant's motion for mistrial. The trial was rescheduled and began on January 25, 2007 against both appellant and Johns.
 {¶ 4} At trial, the following individuals testified on behalf of the state: Umar Clark, Rasheed Mathis, Tatiana Franklin, Angela Sims, Officer Antonia Montijo, Detective George Peters and Sergeant Nathan Wilson. A summary of their testimony follows.
 {¶ 5} On the evening of October 2, 2005, the co-defendant, Johns, approached Umar Clark ("Clark") at a gas station. Johns pointed a gun at Clark, *Page 4 
directed him to leave and threatened to shoot and kill him. Frightened, Clark left the gas station with his son, Devon, without purchasing gas and traversed to a nearby convenience store.
 {¶ 6} While at the convenience store, Clark telephoned his girlfriend, Tatiana Franklin ("Franklin"), and informed her that he had been threatened at gun point, ran out of gas and was stranded at the store. Franklin agreed to meet Clark at the convenience store. Additionally, she telephoned his brother, Rasheed Mathis ("Mathis"), for assistance.
 {¶ 7} Shortly after Franklin's arrival at the convenience store, Mathis appeared with his girlfriend, Angela Sims ("Sims") and her infant son, Devin. Clark told Mathis of the death threat. The two agreed to obtain a gas can from a neighbor who lived on nearby Englewood Street. Their plan was to purchase gasoline and then replenish the vehicle.
 {¶ 8} Mathis drove Franklin's vehicle with Clark in the passenger seat down Englewood Street in pursuit of a gas can. Franklin drove behind the men in Sims' vehicle. Sims was in the passenger seat, her infant son in the seat behind her, and Clark's teenage son, Devon, in the seat behind Franklin.
 {¶ 9} As Mathis drove down Englewood Street, Clark saw three men he believed he knew. Just as he exited the vehicle, gun shots rang out towards him. He jumped back into the vehicle and Mathis sped down the street.
 {¶ 10} During the shooting, the women and children were in the vehicle *Page 5 
following Mathis and Clark witnessing the event. Franklin testified that she attempted to escape by reversing the vehicle when the three men in hooded sweatshirts holding handguns turned and began shooting at their vehicle.
 {¶ 11} Officer Montijo testified that she and her partner were driving down a nearby street when she heard and witnessed gun shots being fired on Englewood Street. She witnessed shots being fired at two vehicles with one vehicle speeding away in one direction while the other reversed in the other direction away from the shots.
 {¶ 12} Mathis and Clark testified that, as they drove from the shooting, Clark telephoned 911 and informed police of the incident. Shortly thereafter, the two men were met by police on East 105th Street and North Boulevard. Unaware of the exact circumstances of the shooting, the police immediately handcuffed the men and searched their persons as well as the vehicle. After speaking with the men and noticing the bullet holes in the vehicle, the police released the men from the handcuffs. It was then that Franklin, Sims and the children arrived at the location. At that time, the officers interviewed the women as well. Officer Montijo confirmed that Clark identified appellant at that time as one of the shooters.
 {¶ 13} A few days after the shooting, Clark, Mathis, Franklin and Sims went to the police station. There, detectives obtained written statements of Clark, Mathis and Franklin, as well as photo identifications of appellant. At a later date, Clark identified the co-defendant, Johns, as a shooter as well. As a result of these *Page 6 
identifications and evidence, the police arrested appellant and Johns and charged them with felonious assault on Clark, Mathis, Franklin, Sims and Sims' infant son, Devin.
 {¶ 14} Finally, Officer Montijo testified that numerous shell casings were found at the scene of the shooting. Sergeant Nathan Wilson from the Scientific Investigation Unit examined these shell casings and one round of ammunition and determined that there were a minimum of three weapons used and a maximum of five. He clarified that there were most likely three different weapons fired at the scene. Finally, he opined that two of the weapons fired were revolvers while one was an assault rifle.
 {¶ 15} After the preceding testimony, the trial court allowed introduction of the state's exhibits into evidence. Thereafter, the state rested its case. Appellant then moved for a Crim.R. 29 motion for acquittal as to all counts. The court denied appellant's motion as to counts one through five but granted it as to count six, aggravated menacing. Appellant then rested his case and again moved for acquittal as to the remaining charges. The trial court denied appellant's motion.
 {¶ 16} On January 30, 2007, the jury found appellant guilty of felonious assault against Clark and Mathis as charged in counts one and two of the indictment. Additionally, the jury found appellant guilty of the firearm specifications accompanying the two felonious assault charges. The jury, however, found him not guilty of the felonious assault charges in counts three, four and five of the indictment. *Page 7 
The jury returned similar verdicts against the co-defendant, Johns, but he was also found guilty of aggravated menacing.
 {¶ 17} On February 22, 2007, the trial court sentenced appellant to two years incarceration for the felonious assault charges in counts one and two, to run concurrent to each other, and three years for the gun specifications, to run concurrent to each other but consecutive to the felonious assault convictions, for a total of five years imprisonment. The trial court ordered the sentence to be served consecutive to a one year sentence imposed as a result of appellant pleading guilty to a charge of attempted assault in another case, Case No. 472050. In total, appellant was sentenced to a six year prison term for the two cases. The court also indicated that appellant was on probation to the court in Case No. 443114, and that the court terminated that probation.
 {¶ 18} Appellant now appeals his convictions and submits two assignments of error for our review. Appellant's first assignment of error states:
 {¶ 19} "The trial court erred in denying Appellant's motion for acquittal as to the charges when the state failed to present evidence to sustain a conviction."
 {¶ 20} Motions for judgments of acquittal are governed by Crim.R. 29(A) which states that a trial court "shall order the entry of a judgment of acquittal * * * if the evidence is insufficient to sustain a conviction of such offense or offenses."
 {¶ 21} A challenge to the sufficiency of the evidence supporting a conviction requires a court to determine whether the state has met its burden of production at *Page 8 
trial. State v. Thompkins, 78 Ohio St.3d 380, 390, 1997-Ohio-52,678 N.E.2d 541. In reviewing for sufficiency, courts are to assess not whether the state's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction. Id. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Jenks (1991), 61 Ohio St.3d 259,574 N.E.2d 492, paragraph two of the syllabus. The motion "should be granted only where reasonable minds could not fail to find reasonable doubt."State v. Apanovitch (1987), 33 Ohio St.3d 19, 23, 514 N.E.2d 394.
 {¶ 22} Within this assignment of error, appellant maintains that the state failed to establish that he committed a crime in this case because no evidence exists he was involved in the shooting or shot any weapons. First, we note that proof of guilt may be made by real evidence, circumstantial evidence, and direct or testimonial evidence, or any combination of the three, and all three have equal probative value.State v. Nicely (1988), 39 Ohio St.3d 147, 151, 529 N.E.2d 1236. In the instant case, we find that the state presented sufficient evidence establishing appellant as one of the perpetrators of the shooting. Clark, Mathis and Franklin all identified appellant in court, as well as in a photo array, as one of the men who shot at Clark and Mathis on October 2, 2005. Detective George Peters confirmed that Clark and Mathis identified appellant as a shooter. Additionally, shell casings discovered at the *Page 9 
scene and bullet holes found in the car driven by Mathis establish that a shooting did in fact occur that evening. Officer Montijo testified to witnessing bullets being fired at two vehicles on Englewood Street and verified that Mathis and Clark immediately informed her that appellant was one of the shooters. The foregoing evidence, viewed in a light most favorable to the state, sufficiently supports appellant's convictions. Accordingly, appellant's first assignment of error is without merit.
 {¶ 23} Appellant's second assignment of error states:
 {¶ 24} "Appellant's conviction is against the manifest weight of the evidence."
 {¶ 25} Here, appellant argues that his conviction is against the manifest weight of the evidence because there is no evidence establishing appellant possessed any guns or linking appellant to this crime other than the testimony of two convicted felons and one of their girlfriends. We find appellant's argument unpersuasive.
 {¶ 26} In State v. Thompkins, 78 Ohio St.3d 380, 388, 1997-Ohio-52,678 N.E.2d 541, the court illuminated its test for manifest weight of the evidence as follows:
 {¶ 27} "Weight of the evidence concerns `the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in *Page 10 
inducing belief.' Black's [Law Dictionary (6 Ed. 1990)], at 1594."
 {¶ 28} When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a "`thirteenth juror'" and disagrees with the factfinder's resolution of the conflicting testimony. Id., citingTibbs v. Florida (1982), 457 U.S. 31, 45, 102 S.Ct. 2211,72 L.Ed.2d 652. The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether, in resolving conflicts in the evidence, the court clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. SeeState v. Martin (1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717.
 {¶ 29} The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction. Id.
 {¶ 30} In this matter we cannot conclude that the jury lost its way. First, as did the jury, we lend credence to the testimony provided by Mathis, Clark and Franklin that appellant was a shooter as no other testimony or physical evidence was offered to contradict such testimony. Furthermore, additional evidence corroborates the testimony of Mathis, Clark and Franklin. Officer Montijo testified she witnessed gun shots being fired at two vehicles on Englewood. Within minutes thereafter she arrived at the vehicle that Mathis was driving, noticed bullet holes throughout the vehicle, and found no guns on Mathis or Clark or in the vehicle. Clark informed her *Page 11 
then that appellant shot at him. Moreover, Sergeant Wilson opined that the shell casings discovered at the scene indicated that there were most likely three guns used during the shooting. That testimony corroborated that of Mathis, Clark, Franklin and Sims that a total of three men shot at Mathis and Clark. Weighing all the evidence and all reasonable inferences, we find that the trial court could reasonably find appellant committed a felonious assault upon Mathis and Clark with a firearm. Accordingly, appellant's second assignment of error is without merit.
Judgment affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
 MARY EILEEN KILBANE, P.J., and FRANK D. CELEBREZZE, JR., J., CONCUR. *Page 1