JOURNAL ENTRY AND OPINION *Page 3 
{¶ 1} Defendant-appellant Antonio Payne appeals from convictions on four counts of rape, one count of gross sexual imposition, two counts of kidnapping, two counts of possession of drugs, one count of drug trafficking and one count of possession of criminal tools. He maintains that the state failed to produce sufficient evidence of each offense, that the convictions are against the manifest weight of the evidence, and that the court abused its discretion by admitting unreliable identification testimony. We find no error and affirm.
 {¶ 2} The victim testified that she had been jogging when Payne pulled his car alongside her as she ran. He tried to talk to her, but she ignored him and kept running. The victim said that Payne, who by this time had exited his car, "snatched her up" by pulling one of her arms behind her back and putting his other arm around her neck. She tried to use her cell phone to call for help, but he took it away. Payne pulled her into a back yard and raped her. During her struggle, the victim lost a glove that had caught on a fence.
 {¶ 3} Someone came out of the house before Payne could finish, so he forced the victim into his car. He reclined the passenger seat so that the victim could not be seen from the outside, and placed a shirt over her head to prevent her from seeing where he was taking her. When they arrived at Payne's destination, he removed the cover from her eyes and took her into a two-story apartment building with a greenish-blue exterior. The victim noted that the staircase leading to the *Page 4 
second floor had green steps and that the two doors at the top of the steps had numbers written on them, one of which was the number "7." Payne forced the victim into the apartment, undressed her and, over a period of time, fondled her breasts and vaginally, anally and orally raped her. She described the bed on which these rapes occurred as being merely a bed and frame, with no headboard.
 {¶ 4} The victim believed that Payne was intoxicated because he smelled of alcohol. She testified that at one point he offered her a beer, and at another point told her that he was going to make her "do coke." Her chance to escape occurred when he fell asleep while he forced her to perform oral sex on him. She wrapped herself in a towel, grabbed her clothes and fled the apartment. A passerby came to her aid and called the police.
 {¶ 5} When the police arrived, the victim learned that Payne had transported her nearly 100 blocks from her original location. She told the police about losing a glove as Payne raped her in the back yard and described the house where it occurred as having two ornamental "ducks" on the front steps. A police detective confirmed the accuracy of the victim's story by not only locating the residence with the ornamental ducks, but finding the glove that the victim said she lost during the initial rape.
 {¶ 6} The detective drove the victim to the area where she had fled from the apartment and the victim spotted the apartment where the rapes occurred. An officer from that area testified that the victim's description of her assailant as a male, *Page 5 
in his early 20s, five feet eight inches, heavy-set and either light-skinned black or of Hispanic descent with a tattoo on the upper arm, caused him to give Payne's name to the detective. Although the victim could not identify the make of the car driven by Payne, she did know the color. The officer testified that Payne drove a car of the same color identified by the victim.
 {¶ 7} The victim identified Payne from a photo array and then drew a diagram of the apartment in which she had been raped. The police executed a search warrant at Payne's apartment, and found that the victim had accurately described the exterior of the building, the color of the stairwell, the hand-written number on the apartment door and interior of the apartment, including the bed. Inside the apartment, the police confiscated cocaine, a small scale and a box of clear plastic sandwich bags of a kind commonly used to package cocaine for sale. The police also discovered a camera mounted outside the apartment and pointing down the staircase. The camera was attached to a television inside the apartment.
 {¶ 8} The police recovered bedding from the apartment and submitted it, along with DNA samples from Payne and the victim, for testing. Results of the testing showed that none of Payne's DNA had been recovered from the victim. The victim did say, however, that Payne had used a condom while raping her. The police did recover Payne's DNA from the towel that the victim had covered herself with when fleeing from his apartment. *Page 6 
 {¶ 9} Payne presented an alibi defense, with witnesses claiming that he had been in their company at the time the rape occurred.
 I {¶ 10} Payne's first assignment of error argues that the state failed to produce sufficient evidence to establish the elements of rape and drug possession. He maintains that there were inconsistencies in the testimony, including the lack of semen found on the victim, the absence of her fingerprints from inside his apartment and car, and the strength of his alibi witnesses.
 {¶ 11} Almost all of Payne's arguments more properly relate to the weight, not the sufficiency, of the evidence. In State v.Thompkins, 78 Ohio St.3d 380, 1997-Ohio-52, paragraph two of the syllabus states: "The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different." The "sufficiency" of the evidence is essentially a due process review to determine the quality of the evidence as it relates to each essential element of the offense. Id. at 386; State v. Jenks
(1991), 61 Ohio St.3d 259, paragraph two of the syllabus. The "weight" of the evidence is a quantitative analysis to determine "the inclination of the greater amount of credible evidence offered in a trial[.]" Id. at 387 (emphasis deleted). The distinct nature of these two appellate standards of review are such that there may be legally sufficient evidence to establish the elements of a particular offense, but the weight of that evidence could be so questionable as to *Page 7 
show that the trier of fact clearly lost its way and created a manifest miscarriage of justice that requires reversal.
 {¶ 12} For the most part, Payne offers no argument to show that the state failed to establish any particular element of the charged offenses. His argument simply questions the credibility of each witness and alleged gaps in the evidence. These are arguments going to the weight of the evidence and will be addressed separately under the second assignment of error.
 {¶ 13} Payne arguably does contest the sufficiency of the evidence relating to the drug possession charge. He maintains that the discovery of drugs in the apartment does not establish beyond a reasonable doubt that he possessed or trafficked in those drugs.
 {¶ 14} When reviewing a claim that there is insufficient evidence to support a conviction, we view the evidence in a light most favorable to the prosecution to determine whether any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jenks, supra.
 {¶ 15} To prove the offense of possession of drugs pursuant to R.C.2925.11(A), the state had to show that appellant knowingly possessed a controlled substance. R.C. 2925.01(K) defines possession as "*** having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." Possession is considered a voluntary act "if the possessor *Page 8 
knowingly procured or received the thing possessed, or was aware of the possessor's control of the thing possessed for sufficient time to have ended possession." R.C. 2901.21(D)(1).
 {¶ 16} In State v. Brown, Cuyahoga App. No. 89732, 2007-Ohio-527,1f7-8, we stated:
 {¶ 17} "Possession can be actual or constructive. State v. Haynes
(1971), 25 Ohio St.2d 264, 267 N.E.2d 787. Actual possession entails ownership or physical control, whereas constructive possession is defined as `knowingly exercising dominion and control over an object, even though [the] object may not be within his immediate physical possession.' State v. Hankerson (1982), 70 Ohio St.2d 87,434 N.E.2d 1362, syllabus; State v. Messer ( 1995), 107 Ohio App.3d 51, 56,667 N.E.2d 1022.
 {¶ 18} "The state may show constructive possession of drugs by circumstantial evidence alone. State v. Trembly (2000),137 Ohio App.3d 134, 141, 738 N.E.2d 93. Circumstantial evidence is defined as `[t]estimony not based on actual personal knowledge or observation of the facts in controversy, but of other facts from which deductions are drawn, showing indirectly the facts sought to be proved.' State v.Nicely (1988), 39 Ohio St.3d 147, 150, 529 N.E.2d 1236, quoting Black's Law Dictionary (5Ed. 1979) 221. It possesses the same probative value as direct evidence, being indistinguishable so far as the jury's fact-finding function is concerned. State v. Jenks,61 Ohio St.3d at 272. All the jury need do is weigh all of *Page 9 
the evidence, direct and circumstantial, against the standard of proof beyond a reasonable doubt. Id."
 {¶ 19} Viewing the facts in a light most favorable to the state, we find that a reasonable trier of fact could have found that the state established the elements of possession beyond a reasonable doubt. The drugs recovered from the apartment were on a small table that contained an oval mirror, scale, and clear plastic bags. Payne's fingerprints were found on the mirror. In an oral statement given to the police at the time of his arrest, Payne admitted that he lived at the apartment, and that "the bags and electronic scale were his[.]" The victim testified that while in the apartment, Payne offered her cocaine. This circumstantial evidence permitted a reasonable trier of fact to conclude that the state established the elements of possession.
 II {¶ 20} The second assignment of error complains that the jury's verdict is against the manifest weight of the evidence. He points to the absence of any physical evidence to tie him to the rape and that the victim was mistaken in her identification of him.
 {¶ 21} The manifest weight of the evidence standard of review requires us to review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage *Page 10 
of justice that the conviction must be reversed and a new trial ordered.State v. Otten (1986), 33 Ohio App.3d 339, 340. The use of the word "manifest" means that the trier of fact's decision must be plainly or obviously contrary to all of the evidence. This is a difficult burden for an appellant to overcome because the resolution of factual issues resides with the trier of fact. State v. DeHass (1967),10 Ohio St.2d 230, paragraph one of the syllabus. The trier of fact has the authority to "believe or disbelieve any witness or accept part of what a witness says and reject the rest." State v. Antill (1964), 176 Ohio St. 61, 67.
 {¶ 22} Payne offers no compelling reasons for us to conclude that the jury clearly lost its way and created a manifest miscarriage of justice. At all events, the victim's version of events was substantiated. Her physical description matched that of Payne, including a telltale tattoo on his upper arm. She recalled with detail the interior layout of the apartment and the distinctive color of the staircase leading to that apartment. The towel she took from the apartment had Payne's DNA on it. She correctly identified the area where she was first raped by describing a distinctive feature of the house. The police confirmed this location by finding the pair of gloves that she said were left behind on the scene. Finally, although she could not identify the make of Payne' car, she correctly identified its color.
 {¶ 23} The jury likewise did not lose its way by finding Payne guilty of the drug offenses. The presence of the scale and plastic bags, and the presence of a television camera mounted above the stairs leading to the apartment could lead the *Page 11 
jury to conclude that they were being used for the preparation and sale of drugs. Finally, the victim's recollection that Payne offered her cocaine during the time she was in the apartment confirmed that Payne had access to the drug.
 {¶ 24} Payne's alibi, by contrast, was self-serving and relied on the testimony of his brother, who admitted at trial that he was in prison for drug offenses. The brother said that at the time these offenses occurred, he had been out on bond for the offense that gave rise to his drug conviction and that he and Payne had been at a nightclub together and that Payne had spent the night with him and his girlfriend. That testimony lacked the convincing details offered by the victim, particularly given that she was found immediately after the rape carrying a towel that bore Payne's DNA. Her accurate description of both Payne and the inside of his apartment lent significant credence to her story. We find that the jury did not lose its way by finding Payne guilty as charged.
 III {¶ 25} Payne's third assignment of error challenges the reliability of the victim's identification. He maintains that the photo array used by the police was impermissibly suggestive.
 {¶ 26} Payne did not raise any objection to the admissibility of the photo array prior to trial, so he has waived all but plain error. Crim.R. 52(B) states that plain errors or defects which affect substantial rights may be grounds for reversal even though they were not brought to the attention of the trial court. Notice of plain error, *Page 12 
however, applies only under exceptional circumstances to prevent a manifest miscarriage of justice. State v. Long (1978), 53 Ohio St.2d 91, paragraph three of the syllabus. Plain error does not exist unless it can be said that but for the error, the outcome of the trial would have clearly been otherwise. State v. Moreland (1990), 50 Ohio St.3d 58, 62.
 {¶ 27} "When a witness has been confronted with a suspect before trial, due process requires a court to suppress her identification of the suspect if the confrontation was unnecessarily suggestive of the suspect's guilt and the identification was unreliable under all the circumstances." State v. Waddy (1992), 63 Ohio St.3d 424, 438, citingNeil v. Biggers (1972), 409 U.S. 188.
 {¶ 28} We find nothing so suggestive about the composition of the photo array that there is a substantial likelihood of misidentification. The rapes occurred during daylight hours, over a long period of time during which the victim had ample opportunity to see Payne and commit his facial features to memory. Payne admitted he lived in the apartment where the rapes occurred, and the towel the victim took from that apartment contained Payne's DNA. Her recollection of exterior and interior features of the apartment confirmed her presence inside the apartment. The totality of the circumstances show that the victim's identification of Payne remained consistent with other evidence and was not so unreliable as to constitute a manifest miscarriage of justice under the plain error standard.
 Judgment affirmed. *Page 13 
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
 MARY EILEEN KILBANE, P.J., and CHRISTINE T. McMONAGLE, J., CONCUR *Page 1