[Cite as *State v. Broom*, 2011-Ohio-4952.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 95965**

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## RAY BROOM

DEFENDANT-APPELLANT

**JUDGMENT:**
**AFFIRMED**

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-536414

**BEFORE:** Stewart, P.J., Jones, J., and Cooney, J.

**RELEASED AND JOURNALIZED:** September 29, 2011

**ATTORNEY FOR APPELLANT**

Rick Ferrara
1424 East 25th Street
Cleveland, OH    44114


**ATTORNEYS FOR APPELLEE**

William D. Mason
Cuyahoga County Prosecutor

BY:    Brad S. Meyer
Assistant County Prosecutor
The Justice Center
1200 Ontario Street, 8th Floor
Cleveland, OH    44113


MELODY J. STEWART, P.J.:

{¶ 1}   Defendant-appellant, Ray Broom, appeals from his convictions for criminal trespass and vandalism, and  argues that the support for his conviction for vandalism is insufficient and against the manifest weight of the evidence.   He also contends that the trial court's impromptu increase of his time of imprisonment at the sentencing hearing was an abuse of discretion and contrary to law because the action taken was done without due consideration and in disregard of the statutorily required sentencing factors.

**{¶ 2}** Bob Rose, the co-owner of a scrap metal business located in an industrial park, proceeded to his establishment around midnight on April 13, 2010 after receiving notification of a security alarm activation. Power had been terminated to the structure after wires were cut; the business had experienced a similar break-in two nights earlier.

**{¶ 3}** The Cleveland police department also responded and conducted a search of the premises while accompanied by Rose. The officers then entered an unlit building identified by Rose as the source of the alarm, and while using flashlights, discovered Broom and co-defendant Eddie Miller hiding behind a large industrial machine. Broom and Miller were patted down, arrested, and taken to the police station. The police then performed a search of both men; Miller possessed a flashlight and a headlamp while no items were found on Broom.

**{¶ 4}** The subsequent investigation by police revealed a damaged door in addition to severed power lines. A tool bag, bolt cutters, ladder, and a wire stripping device were photographed and retrieved by detectives while processing the crime scene. However, the recovered items were not dusted for fingerprints since they were covered by an oily substance.

**{¶ 5}** Broom was subsequently indicted for breaking and entering, theft, vandalism, and possession of criminal tools. A jury trial commenced on September 1, 2010, and the state successfully moved to amend Broom's indictment to incorporate the lesser included offenses of criminal trespass and petty theft. The jury ultimately returned a verdict of guilty to criminal trespass and vandalism.

**{¶ 6}** The trial court held a sentencing hearing on October 6, 2010. Broom stipulated to restitution to compensate Rose for damages related to the vandalism conviction. The court recounted his criminal history, made note of his lack of remorse, and stated that there were "plenty good reasons to send you to prison." Nevertheless, the court decided that remanding Broom to a work release facility was appropriate in this instance, since this sentence would allow him to repay the victim and simultaneously protect the community. Upon hearing the terms of his sentence, Broom became highly disruptive and had to be removed from the courtroom. The court then suspended the hearing due to his outburst and additionally stated on the record that a final order had yet to be entered.

**{¶ 7}** The sentencing hearing resumed on October 8, 2010. The court in this instance expressed concerns that Broom's demonstrated volatility could in fact compromise community safety, and also opined that his criminal history and capacity for hysterics suggested a high probability of recidivism. Broom was given an opportunity to speak and offered an apology to the court for his previous behavior, but nevertheless exhibited no remorse for his actions. In fact, he tempered his concession with the statement: "But if I'm right, I'm right. Simple as that." The court proceeded to consider the factors set forth in R.C. 2929.11 for purposes of felony sentencing, and also the factors contained in R.C. 2929.12 relating to recidivism and seriousness of conduct. The court then declared that Broom was not amenable to community control sanctions and sentenced him to a nine-month prison term. Broom yet again became disruptive and

interrupted the court with protestations, and with this the court increased his sentence to the term of one year.

**{¶ 8}** Broom asserts that the manifest weight and sufficiency of evidence in support of his conviction for vandalism is inadequate because the state's evidence merely demonstrates that he was on the property during the incident and this was not persuasive enough to overcome the presumption of his innocence. He reiterates his involvement was limited to passively accompanying Miller, that he was not on scene to aid and abet, and opines that the state's presentation consisting solely of testimonial evidence demonstrates that he was merely present during the incident. Broom points to the fact that no forensic evidence was presented to prove that he had handled the tools used in furtherance of the crimes, that his vehicle was not present at the scene, and that he did not even have a flashlight.

**{¶ 9}** The state conversely argues that every element of vandalism was in fact proven because all it was required to show was that Broom knowingly caused physical harm to the property of another. The state observes that Broom walked onto the property, was discovered while hiding in an area containing tools utilized to damage and traverse a fence, entered through a locked door, and that power lines were severed. The state finally maintains that circumstantial evidence is sufficient to prove guilt beyond a reasonable doubt.

**{¶ 10}** When conducting a review of the sufficiency of the evidence, an appellate court must conclude, "after reviewing the evidence in a light most favorable to the

prosecution, whether any reasonable trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks* (1991), 61 Ohio St.3d 259, 273, 574 N.E.2d 492. When reviewing a manifest weight of the evidence claim, "[t]he appellate court sits as the 'thirteenth juror' and, reviewing the entire record, weighs all the reasonable inferences, considers the credibility of witnesses and determines whether, in resolving conflicts in evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Thompkins*, 78 Ohio St.3d 380, 387, 1997-Ohio-52, 678 N.E.2d 541.

{¶ 11} The criminal offense of vandalism is defined by R.C. 2909.05(B)(1)(a), stating: "[n]o person shall knowingly cause physical harm to property that is owned or possessed by another, when *** [t]he property is used by its owner or possessor in the owner's or possessor's profession, business, trade, or occupation, and the value of the property or the amount of physical harm involved is five hundred dollars or more ***." While the mere presence of a defendant at the scene of a crime is not singularly sufficient to establish complicity by aiding and abetting, evidence demonstrating that a defendant "supported, assisted, encouraged, cooperated with, advised, or incited the principal in the commission of the crime," accompanied by criminal intent, is sufficient. *State v. Widner* (1982), 69 Ohio St.2d 267, 269, 431 N.E.2d 1025; *State v. Johnson*, 93 Ohio St.3d 240, 2001-Ohio-1336, 754 N.E.2d 796, syllabus. "Such intent may be inferred from the circumstances surrounding the crime." *Johnson*, 93 Ohio St.3d 240, syllabus.

**{¶ 12}** "Proof of guilt may be made by circumstantial evidence, real evidence, and direct evidence, or any combination of the three, and all three have equal probative value." *State v. Zadar*, 8th Dist. No. 94698, 2011-Ohio-1060, ¶18, citing *State v. Nicely* (1988), 39 Ohio St.3d 147, 529 N.E.2d 1236. "Circumstantial evidence is not only sufficient, but may also be more certain, satisfying and persuasive than direct evidence." *Michalic v. Cleveland Tankers, Inc.* (1960), 364 U.S. 325, 330, 81 S.Ct. 6, 5 L.Ed.2d 20.

**{¶ 13}** In this instance, the fact that business owner Rose's property had been comparably damaged by the severing of power lines only two days earlier can not be attributed to sheer coincidence. After the first incident and to increase surveillance, Rose collaborated with the alarm security provider to ensure alarm integrity for purposes of thwarting any comparable criminal attempt. Rose arrived on scene approximately 15 minutes after receiving notification of the second break-in. A brief time later, Broom was discovered by police hiding behind large machinery in a previously undamaged building that presently had sustained more than $3,000 in damages.

**{¶ 14}** Under these circumstances, Broom's assertion that he passively accompanied Miller is neither reasonable nor plausible. Reasonable minds would conclude that the aggregate circumstantial evidence is wholly consistent with his participation in the underlying criminal acts, and logically supports a finding of guilt. As a result, Broom's first two assignments of error are not well taken and are accordingly overruled.

{¶ 15} Broom, in his third and fourth assignments of error, contends that the sentencing hearing was tainted, contrary to law, and also that the trial court abused its discretion. He argues that the trial court failed to state for the record its rationale for imposing the maximum sentence, or even why it rashly increased his sentence from nine months to one year at the same sentencing hearing. Broom requests that the sentence imposed be reversed and the case remanded with instructions to impose the original nine-month sentence.

{¶ 16} The state correctly notes that a trial court is not required to make specific findings or even give reasons prior to imposition of a maximum sentence. The state also echoes the trial court's appraisal of Broom not being a viable candidate for work release or community control sanctions due to his history of probation violations as well as his propensity for volatility.

{¶ 17} A trial court possesses broad discretion to impose a prison sentence within the statutory range. *State v. Gatson*, 8th Dist. No. 94668, 2011-Ohio- 460, ¶15. In order to find an abuse of discretion, we must find that the trial court's attitude was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140.

{¶ 18} Public policy disapproves of maximum sentences except for those wrongdoers conforming to characteristic criteria including, but not limited to, recidivism. In this instance, R.C. 2929.14(C) is instructive and provides "the court imposing a sentence upon an offender for a felony may impose the longest prison term authorized for

the offense *** only upon offenders who committed the worst forms of the offense, upon offenders who pose the greatest likelihood of committing future crimes ***." "R.C. 2929.13(B) creates a preference for (but not a presumption in favor of) community control (formerly probation) for lower-level felonies [and also] allows, but does not mandate, findings before imprisonment for felonies of the fourth or fifth degree ***." *State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470, ¶43. All considered, trial courts have wide latitude and "full discretion to impose a prison sentence within the statutory range and are [not] required to make findings or give their reasons for imposing maximum, consecutive, or more than the minimum sentences." *State v. Mathis*, 109 Ohio St.3d 54, 2006-Ohio-855, 846 N.E.2d 1, ¶37.

{¶ 19} In this instance, the trial court on two occasions conducted thorough and deliberate fact-finding to ascertain the appropriate punishment to be imposed within the applicable sentencing range. Initially, the court reasoned that community control through work release would provide an appropriate sanction and also fulfill the required restitution in order to make the victim whole. Broom's tantrum brought the initial sentencing hearing to an abrupt halt prior to the execution of sentence, and this espisode gave the trial court pause to reconsider.

{¶ 20} Thereafter, the court arrived at the conclusion that incarceration in fact would be more appropriate in light of Broom's 15 prior offenses, proclivity for recidivism, and lack of remorse when viewed in combination with his contempt for authority. The trial court's presumptions rang true when, at the continued sentencing

hearing held several days later and during its pronouncement of a nine-month term of incarceration, Broom again had a disturbing outburst, prompting imposition of a one-year sentence.

{¶ 21} The trial court did not abuse its discretion in sentencing Broom to a one-year term of incarceration even though it is greater than the initially expressed term of nine months because the earlier sentence had not been executed. See *State v. Dawkins*, 8th Dist. No. 88022, 2007-Ohio-1006, ¶7 (a trial court has the authority to amend its sentence and impose a more severe punishment at any time before the execution of its initial sentence commences). Furthermore, a sentence of one year falls within the statutory range for a felony of the fifth degree. Accordingly, Broom's third and fourth assignments of error are overruled.

Judgment affirmed.

It is ordered that appellee recover of appellant its costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MELODY J. STEWART, PRESIDING JUDGE

LARRY A. JONES, J., and
COLLEEN CONWAY COONEY, J., CONCUR